# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEVEN SPRINGS MOUNTAIN RESORT, INC. f/k/a SEVEN SPRINGS FARM, INC., on behalf of JEFFREY J. SIKIRICA, CHAPTER 7 TRUSTEE of DYNAMIC BUILDING CORPORATION, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| JOHN M. HESS, TERRI HESS, DBC REAL ESTATE MANAGEMENT, LLC and DBC CONSTRUCTION LLC, | Filed by Plaintiff Seven Springs Mountain Resort, Inc. on behalf of Jeffrey J. Sikirica, Chapter 7 Trustee of Dynamic Building Corporation |
| Defendants. | |

Counsel of Record for this Party:

Charles B. Gibbons, Esquire
Pa. I.D. No. 08284

Victoria B. Kush, Esquire
Pa. I.D. No. 308424

Eric M. Spada, Esquire
Pa. I.D. No. 311446

BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, Pennsylvania 15219-4413
Telephone: (412) 562-8800
Facsimile:  (412) 562-1041

**JURY TRIAL REQUESTED**

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEVEN SPRINGS MOUNTAIN RESORT, INC. f/k/a SEVEN SPRINGS FARM, INC., on behalf of JEFFREY J. SIKIRICA, CHAPTER 7 TRUSTEE of DYNAMIC BUILDING CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JOHN M. HESS, TERRI HESS, DBC REAL ESTATE MANAGEMENT, LLC and DBC CONSTRUCTION, LLC,<br><br>　　　　　　Defendants. | No.<br><br><br><br>JURY TRIAL REQUESTED |

## **COMPLAINT**

AND NOW comes Plaintiff Seven Springs Mountain Resort, Inc. f/k/a Seven Springs Farm, Inc. on behalf of Jeffrey J. Sikirica, Chapter 7 Trustee of Dynamic Building Corporation, by its undersigned counsel, files this Complaint, averring as follows:

### **Introduction**

This is a civil action to pierce the corporate veil and hold John M. Hess and Terri Hess, respectively President/Treasurer and Secretary of Debtor Dynamic Building Corporation ("DBC" or "Debtor") personally liable for DBC's debt. This civil action also seeks relief through alter ego liability of "DBC Group" entities, DBC Real Estate Management, LLC and DBC Construction, LLC.

### **Parties**

1.　Plaintiff Seven Springs Mountain Resort, Inc. f/k/a Seven Springs Farm, Inc. ("Seven Springs") is a Pennsylvania corporation with its principal place of business located at 777 Waterwheel Drive, Seven Springs, Somerset County, Pennsylvania 15622-4007. Seven

Springs is the largest judgment creditor of DBC, holding judgment award against DBC that was confirmed by Final Order of the Court of Common Pleas of Somerset County, Pennsylvania dated April 29, 2019 and today, with interest is an unpaid sum in excess of $15,360,636.00.

2. Defendants John M. Hess and Terri Hess (the "Hesses") are spouses residing at 428 Heights Drive, Gibsonia, Allegheny County, Pennsylvania 15044.

3. John Hess is the founder and sole shareholder of Debtor DBC and numerous other related business entities. John Hess served as the President/Treasurer of DBC from 1991–Present and the Secretary of DBC from 1992–1994.

4. Terri Hess was a director and officer of DBC, serving as the Secretary of DBC from 1994–2018, at which point DBC's corporate documentation ends.

5. Defendant DBC Real Estate Management, LLC is a Pennsylvania limited liability company with its principal place of business located at 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania.

6. Defendant DBC Construction, LLC is a Pennsylvania limited liability company with its principal place of business also located at 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania.

7. Debtor DBC is a Pennsylvania corporation with its principal place of business also located at 51 Pennwood Place, Suite 200, Warrendale, Allegheny County, Pennsylvania 15086. DBC provided general contracting and construction management services for residential and commercial projects.

8. After Seven Springs attempted to collect the Judgment Award, DBC commenced a Chapter 7 bankruptcy proceeding on August 20, 2019 in the United States Bankruptcy Court

for the Western District of Pennsylvania, captioned *In re: Dynamic Building Corp.*, Case No. 19-23263-GLT (the "Bankruptcy").

9. Jeffrey J. Sikirica, Esq. ("Trustee Sikirica") is the Chapter 7 Trustee of the Bankruptcy.

10. Seven Springs has been authorized to make this filing on behalf of Trustee Sikirica pursuant to the November 23, 2020 Order of the Honorable Gregory L. Taddonio, United States Bankruptcy Judge (Bankruptcy Dkt. No. 186), a true and correct copy of which is attached hereto as **Exhibit A**.

**Jurisdiction and Venue**

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) because this is a non-core action, related to the Bankruptcy.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that the parties engage in business within this district, and the events giving rise to Seven Springs' claims occurred in this district.

**Facts**

13. Seven Springs is a judgment creditor of DBC, having received a Final Arbitration Award (the "Award") against DBC on March 1, 2019 in the amount of Thirteen Million, Nine Hundred One Thousand, Twenty-Eight and 20/100 Dollars ($13,901,028.20) plus interest at the rate of six percent (6%) simple interest on all amounts of the Award that are unpaid after the 30th day from the date of the Award.

14. Seven Springs' Award against DBC was confirmed by Final Order of the Court of Common Pleas of Somerset County, Pennsylvania dated April 29, 2019 and today, with interest

is an unpaid sum in excess of Fifteen Million Dollars ($15,000,000.00) (the "Judgment"). A true and correct copy of the Judgment is attached hereto as **Exhibit B**.

15. Leading to the Judgment, DBC served as contractor and construction manager for a $77 million dollar townhome project known as Southwind at Lake Tahoe ("Southwind" or the "Project") located at Seven Springs' resort in Somerset County, Pennsylvania. Southwind was constructed between 2005 and 2009 in three consecutive phases totaling 154 units. Virtually all of the units, as built, were riddled with construction errors and omissions, resulting in extensive water infiltration.

16. Throughout the construction of the Southwind Project, Hess regularly visited the jobsite to review the work.

17. After the various phases were completed, sold and occupied, Hess learned immediately that the finished units had serious water infiltration problems.

18. Seven Springs dealt directly with Hess, the sole shareholder of DBC, to attempt to address the water infiltration issues, including direct correspondence with Hess and multiple in-person meetings with Hess.

19. Hess was aware of the destructive testing in various Southwind units that revealed the magnitude and extent of water infiltration problems.

20. Hess understood that there were problems with the Southwind townhomes, and represented on numerous occasions that effective repairs would be made, but this was a blatant misrepresentation.

21. Hess subsequently represented that the problems had been corrected by a "leak crew" that did nothing more than apply caulk and Kilz paint to hide the water stains (but made no effort to actually rectify the underlying problems).

22. Hess maintained no records of the water leaks or the work of his "leak crew" and knew that those efforts did not correct the real problems – the improper, shoddy construction.

23. When confronted with the continuous water infiltration problems, Hess denied responsibility, made non-specific excuses for the water leaks, abandoned the project, and threatened to use bankruptcy as an escape hatch.

24. Recognizing how costly the construction deficiencies could be, Hess told Seven Springs' CEO that "I will just close up my company, file for bankruptcy, and just walk away, and you guys can, you know, deal with it."

25. When DBC abandoned its efforts to correct its work, Seven Springs was sued by Southwind residents in two class actions and a number of individual lawsuits. Seven Springs resolved these disputes by undertaking major repairs to each defectively-constructed unit and successfully sought to recover money damages for the cost of repairs to the Southwind units resulting from the actions, errors, omissions and failures of DBC as the contractor and construction manager for the Southwind Project.

26. Both prior to and throughout the litigation proceedings, Hess repeatedly threatened Seven Springs' CEO, Eric Mauck, that if DBC ever faced substantial exposure due to the Southwind Project, Hess would simply put DBC in bankruptcy and continue business under another name.

27. During the arbitration, when asked about a separate lawsuit against DBC advanced by *another* townhome development asserting claims of Fraudulent Misrepresentation and Fraudulent Transfer in 2018, Hess revealed that he "personally bonded off" the claims.

28. After Seven Springs' Final Award was confirmed, DBC refused to pay anything toward the Judgment.

5

29. When Seven Springs undertook discovery in aid of execution on the Judgment, Hess carried out his long-standing threat and filed the Chapter 7 Bankruptcy as to DBC.

30. John Hess continues to own and operate over seventy (70+) other entities using the nomenclature "DBC Group" out of the DBC headquarters in Warrendale, PA that advertise having assets "in excess of $300 million."

31. At all times material hereto, the Hesses dominated and controlled the business and financial affairs of DBC and engaged in a corporate shell game with the other corporate entities that comprise the "DBC Group." The Hesses also comingled their personal affairs and finances with that of DBC, paid personal expenses with corporate assets, failed to maintain corporate formalities, ran DBC in an undercapitalized state, and strategically drained DBC of all assets of value.

32. These issues, coupled with the interests of justice and fairness, support veil piercing to hold the Hesses and their "DBC Group" entities accountable for DBC's debt.

*The "DBC Group" of Entities*

33. The DBC corporate family is extensive with a web of over seventy entities all using "DBC" or "Dynamic Building" in the legal entity name — including DBC Real Estate Management, LLC and DBC Construction, LLC.

34. According to the Pennsylvania Department of State Records, there are currently seventy-five (75) DBC affiliate entities listed as "active" and operating out of DBC's headquarters in at 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania. The commercial

6

signage for this extensive web of entities is not specific to any one of the 75 entities, but rather, is collectively posted as "DBC Group."[1]

35.     Among the DBC Group entities, Hess is also President, Owner and CEO of DBC Real Estate Management, LLC, and DBC Construction, LLC which also operate from the same headquarters as DBC at 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania.  DBC Real Estate Management asserts it has placed over $60 million in private equity in direct investments in multi-family properties with a portfolio value in excess of $300 million.

36.     DBC and the other "DBC Group" entities including DBC Real Estate Management, LLC and DBC Construction, LLC, shared corporate headquarters, equipment, employees, technology and a computer server.  Examples include, but are not limited to, the following:

(i)     All of the "DBC Group" entities are registered with the Pennsylvania Department of State as operating from 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania.

(ii)    DBC and the other "DBC Group" entities shared a computer server through approximately 2018.

(iii)   During August 2018 discovery in Seven Springs' Southwind proceedings against DBC, a DBC Real Estate Management employee was sent to supervise Seven Springs' off-site review of DBC's physical files.

(iv)    On November 4, 2019, Hess testified that DBC had an office lease that expired "[c]ouple years ago."  Hess had previously testified on October 23, 2018 and records reflect that DBC was engaged in active construction projects at least through late 2018.  Thus, DBC was operating without a lease in the DBC Group headquarters for at least a year or more.

(v)     DBC's Project Manager utilized a dual signature block in correspondence, reflecting that he was working for both DBC and another entity in the "DBC Group."

---

[1] According the publically available information from the Pennsylvania Department of State, the seventy-five entities that are based at 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania and comprise the "DBC Group" are listed in **Exhibit C**.

7

37. Documents produced by DBC reflect that the Hesses routinely moved funds – often hundreds of thousands of dollars – between their personal accounts, DBC accounts, DBC Real Estate Management accounts and the account of DBC Construction LLC. Examples include, but are not limited to, the following:

    (i)    Records reflect dozens of loan transactions between DBC Real Estate Management and DBC;

    (ii)    DBC made substantial payments as well as loans for tens of thousands of dollars to John R. Hess;

    (iii)    DBC paid $10,000 to Fauss-Dynamic, a related entity owned 50% by DBC, which was formed to complete an apartment complex;

    (iv)    DBC was involved in numerous loan transactions, progress billings and expense reimbursements with multiple "DBC Group" entities, including DBC Fawn Lake, LP, DBC Alcoma LP, DBC Bower Hill, DBC Trotwood and DBC Cedar Ridge;

    (v)    DBC paid $208,890 to "JRH Holdings" with a listed address tied to John R. Hess' personal residence;

    (vi)    On numerous occasions, large dollar amount transfers were made between John Hess' personal checking account and the DBC checking account.

### *Substantial Comingling of Personal and Business Affairs*

38. Seven Springs avers that as a pattern and practice, the Hesses caused DBC to pay or reimburse for their own personal expenses and those of their family. Based on very incomplete records, some examples DBC paying or reimbursing the personal expenses of the Hesses and their family include but are not limited to:

    (i)    Airfare, hotels, restaurants and other travel expenses (including expenses for non-employee family members) to Dubai, Napa Valley California, Canada, Mexico, Florida, St. Helena, Charlotte, the Bahamas, Belgium, New York City, Las Vegas, and a Royal Caribbean Cruise;

    (ii)    Hotel bills at The Greenbrier; The Plaza, New York City; Bellagio and Wynn Resorts, Las Vegas; Ritz Carlton, St. Thomas Virgin Islands; Sofitel, Philadelphia; and Ritz Carlton, Sarasota;

8

(iii)  Purchases at Louis Vuitton, Vancouver, British Columbia; Paul & Sons Jewelry, Dubai; Tiffany & Co.; Scully & Scully Park Avenue, New York; Bentley Pittsburgh;

(iv)  Numerous purchases at Giant Eagle, Walgreens, Rite Aid, CVS, Walmart, Save on Beer, Wine & Spirits, Whole Foods, Wegmans, Dick's Sporting Goods, Ticketmaster, Christmas Magic, Willis Ski Shop, Michael's, Best Buy, Bed Bath and Beyond, Ritz Camera, Weis Market, Barnes & Noble, Market District and Target;

(v)  College tuition payments, including:

    (i)  Over $52,000 to Allegheny College, where John Hess' son attended for his undergraduate studies;

    (ii)  Over $7,000 to Georgetown University, where John Hess' son attended graduate school;

    (iii)  Over $21,000 to Denison College;

    (iv)  Over $5,000 for room and board to Miami University, Ohio;

    (v)  Over $34,000 to Penn State University, where John Hess' daughter attended college;

(vi)  Charges incurred at Perf-A-Lawn, Bakerstown Feed, Mostard Nursery, McTighe Garden Center, Custom Lawn Care, Fireplace & Patio, Lowes, Professional Pools and West Penn Billiards;

(vii)  Bills which according to publically available sources (http://whirlmagazine.com/caitlyn-hess-and-eric-tangradi/), were vendors utilized for the Hesses' daughter's wedding, including:

    (i)  Anne Gregory Bridal ($1,337.50),
    (ii)  Allison McGeary Florist ($1,500),
    (iii)  Bella Christies Bakery ($1,465.53), and
    (iv)  Omni William Penn ($9,000);

(viii)  Fairmont Pittsburgh ($15,525), Gatto Cycle Shop ($3,138.68), Josten Class Ring ($907.25), Palmaz Vineyards Napa ($2,736);

(ix)  Automobile leases and other vehicle expenses for members of Hess's immediate family, including but not limited to:

- a Mercedes GLK 350 for their daughter, Caitlyn Hess from 2009 – 2014;

- a Volvo XC 60 from 2009 – 2015 for their son, Michael Hess;

9

- a Cadillac CTS from 2011 – 2015 for John Hess' father, John R. Hess Jr.; and

- a Mercedes GL 550 from 2009 – 2013 and a Mercedes GL 450 from 2013 – 2017 for Terri Hess.

(x) Substantial amounts of personal expenses were recorded as overhead on certain jobs and expensed by DBC, all of which reduced federal and state taxes on the profits from those projects.

- By way of example, in 2012, expenses totaling $51,623.00 were recorded to DBC's overhead, with expenses including but not limited to:

    o   "Niagara Falls Casino,"

    o   "Xpress Clothing,"

    o   "7 Springs rental,"

    o   "Wegmans,"

    o   "Giant Eagle,"

    o   "Whole Foods,"

    o   "Soergel's Market,"

    o   "Nemocolin Woodlands Reservations,"

    o   "Chateau Lauier – Ottawa,"

    o   "Windward Islands – Airfare,"

    o   "Mirage Hotel – Las Vegas,"

    o   "Bellagio Prime,"

    o   "MGM Las Vegas"

    o   "Wynn Las Vegas,"

    o   "The Cosmopolitan Docg – Las Vegas,"

    o   "Four Seasons Hotel – Toronto,"

    o   "The Setai Fifth Avenue,"

    o   "DoubleTree – New York City,"

10

- o "Marriott – Sanibel,"
- o "St Bart – Hotel,"
- o "St Bart Surf Shop,"
- o "Wine & Spirits,"
- o "Save On Beer – Mars,"
- o "Sarah's Hallmark," and so on.

- Notably, $23,691.00 of the expenses charged to DBC's overhead in 2012 were labeled to "Caitlyn" or "Caitlyn Hess," John and Terri Hess' then 22-year old daughter.

39. During the January 21, 2020 meeting of creditors, John Hess admitted that DBC was making payments to Enterprise Bank on his "personal line of credit," supposedly to reimburse Hess for money that he had personally loaned to DBC.

40. Ongoing transfers from Enterprise Bank and John Hess date back to 2009, with Enterprise Bank transferring $1.3 Million between John Hess' personal credit line/personal checking account and the DBC checking account in 2009, with dozens of similar transfers of large dollars amounts continuing over the years.

41. Also during the January 21, 2020 meeting of creditors, John Hess admitted that DBC purchased and paid for one of the Southwind townhomes at Seven Springs. When asked about use of the townhome, Hess conceded that it was not used as a rental property.

*Failure to Maintain Corporate Formalities*

42. Seven Springs avers that as a pattern and practice, the Hesses failed to observe corporate formalities with respect to DBC.

43. DBC produced a meager record minute book running from 1991 – 2018. Corporate records through the present were requested from DBC and none were produced.

11

44. The minutes reflect that John and Terri Hess exclusively controlled all actions of the corporation as the sole Directors and Officers throughout the life of the corporation.

45. No notation of dissent was ever entered in the minutes, reflecting the Hesses' assent to all actions of DBC.

46. Even though DBC's by-laws call for a Vice President and Assistant Secretary as Officers, no such positions were ever filled or maintained.

47. While Terri Hess is listed in the minutes as Secretary of DBC from 1994 – 2018, she was not disclosed as an Officer or Director on any of DBC's bankruptcy schedules or amendments.

48. Substantial monetary transfers between DBC and other DBC Group entities are reflected in DBC's journal entries, and reimbursement of expenses for DBC Group entities on a monthly basis are documented for several years.

49. John Hess has admitted, under oath, that DBC misappropriated funds. At the 341 meeting on November 4, 2019, John Hess admitted that MV Residential Construction paid funds to DBC that were to be held in trust for subcontractors; however, DBC deviated said funds and used them for its own invoices and expenses.

50. John Hess has also admitted, under oath, that he has personally guaranteed certain debts of DBC. In particular, Foxmoor, the developer of approximately 250 apartments and condominiums on a multi-acre tract in Cranberry Township, PA, filed suit against DBC and Hess in the Court of Common Pleas of Butler County, Pennsylvania, at Case No. 2018-10701, alleging that both DBC and Hess "made fraudulent and deceitful misrepresentations and omissions regarding the payment of Subcontractors and Suppliers in connection with the Project" and that "DBC, at the express direction of Hess, transferred substantial assets of DBC to Hess and/or third-

party entities under common ownership or control with DBC and /or Hess….The identities of these transferees will be ascertained through discovery." During the Seven Springs arbitration against DBC related to the Southwind Project, Hess testified that he personally bonded off the $1,137,640.95 claim by Foxmoor.

### *Undercapitalization and Draining of DBC's Remaining Assets*

51. Evidence of undercapitalization was discovered in the reviewed financial statements regarding the Company's potential inability to continue as a going concern. That note is present in the 2014, 2015 and 2016 reviewed financial statements.

52. Despite this, DBC was paying for annual club dues to establishments including the Duquesne Club, Allegheny Country Club, Harvard-Yale-Princeton Club and Diamond Run Country Club, some up to 2018 — where all documentation produced by DBC ends.

53. Also, on a monthly basis running at least through July 2019, DBC was paying monthly "Commissions" to John R. Hess, Jr. – the father of John Hess, who according to publically available sources is approximately 85 years of age. Hess claimed that he "sold construction projects, and he would be paid a commission on what he sold." When asked if there was some kind of accounting kept of what projects he sold, Hess testified affirmatively, but no such accounting was ever produced. Further, Hess conceded that no written agreement ever existed related to the "Commissions."

54. At the 341 meeting on November 4, 2019, John Hess testified that DBC had "an auction two or three years ago" at which time DBC supposedly liquidated its construction equipment--even though Hess previously testified that DBC projects such as the Foxmoor townhomes were in active construction in late 2018.

13

55. One of the few remaining assets of significance reported by DBC on its original bankruptcy schedule (Bankruptcy Dkt. 18, filed on September 17, 2019) and its amended schedule (Bankruptcy Dkt. 113, filed on January 22, 2020) were 13 Pittsburgh Steelers Seat Licenses.

56. Yet in February 2020, DBC changed its declaration and claimed the Steelers seat licenses were owned by an "insider of the Debtor" and not the Debtor.

57. Further pleadings by Dollar Bank (Bankruptcy Dkt. 120) stated that "[m]utually acceptable arrangements with respect to the Seat Licenses and the Bank's loan have been made with the owner of the Seat Licenses."

58. Thereafter, yet another amended schedule was filed by Debtor on February 28, 2020 (Bankruptcy Dkt. 126) removing all 13 Pittsburgh Steelers Seat Licenses from the declared assets of the bankruptcy estate.

59. Beyond the peculiarities of this abrupt change, documents produced by DBC reflect that the Steelers Seat Licenses were squarely a part of the Debtor's estate: showing that DBC was paying for the tickets; the ticket invoices were being sent to DBC employees; and the licenses were tied to DBC's corporate address.

### Count I

### Alter Ego/Piercing the Corporate Veil of DBC

60. Seven Springs incorporates by reference each and every averment contained in Paragraph 1 through 59 as though fully set forth herein.

61. As averred above, Seven Springs' March 1, 2019 Final Award resulted from a proceeding in which DBC and Hess, as principal, fully participated.

62. Said Award was finalized in a Judgment by Order of the Somerset County Court of Common Pleas dated April 29, 2019.

63. Seven Springs holds a non-dischargeable Judgment against DBC.

64. The Hesses, as alter ego of DBC, have conducted, managed and controlled its affairs without regard to the separate existence of the corporate entity and have used the corporate entity to injure Seven Springs and other creditors who have appeared in the bankruptcy proceeding.

65. The Hesses' conduct fraudulently stripped DBC of the asserts necessary to correct its faulty construction at Seven Springs, pay the judgment it owes to Seven Springs and pay its bills for goods and services supplied by other creditors.

66. The Hesses' unlawful actions and activities require that the veil of DBC as a Pennsylvania corporation be pierced and disregarded in the interests of justice and fairness and that the Hesses be personally held liable for DBC's debt to Seven Springs and other creditors who have appeared in the bankruptcy proceeding.

WHEREFORE, Seven Springs requests damages against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), plus interest, costs and attorneys' fees.

## Count II

### Alter Ego as to DBC Real Estate Management, LLC and DBC Construction, LLC as Part of the DBC Group

67. Seven Springs incorporates by reference each and every averment contained in Paragraphs 1 through 66 as though fully set forth herein.

68. Hess operates over seventy (70+) entities from the same headquarters at 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania, which are collectively identified in signage by Hess as the "DBC Group."

69. DBC Real Estate Management, LLC and DBC Construction, LLC are two of the entities that are part of the DBC Group.

70. DBC, DBC Real Estate Management, LLC and DBC Construction, LLC, together with the DBC Group entities, share identity of ownership, have unified administrative control, share equipment, technology, resources and headquarters, and conduct similar or supplementary business functions.

71. DBC, the entity against which Seven Springs' Judgment was entered, is the only entity among the 70+ entities in the DBC Group that has claimed insolvency.

72. DBC conspicuously declared bankruptcy after repeated threats of avoiding liability for the Southwind Project and following Seven Springs' efforts to collect its Judgment.

73. DBC's unlawful actions and activities require that the DBC Real Estate Management, LLC and DBC Construction, LLC as part of the DBC Group are deemed alter egos of DBC in the interests of justice and fairness and that the DBC Real Estate Management, LLC and DBC Construction, LLC as part of the DBC Group are held liable for DBC's debt to Seven Springs and other creditors.

WHEREFORE, Plaintiff Seven Springs requests damages against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), plus interest, costs and attorneys' fees.

## Count III

### Veil Piercing / Personal Liability of John M. Hess Based on His Tortious Participation

74. Seven Springs incorporates by reference each and every averment contained in Paragraphs 1 through 73 as though fully set forth herein.

75. Hess, the sole shareholder of DBC, was personally aware of the pervasive water infiltration at the Southwind Project.

76. Hess gave Seven Springs a commitment that the water infiltration issues would be repaired.

77. Instead of working to resolve the construction issues and stop the water infiltration, Hess directed a "leak crew" to return to Southwind to cover and hide the water leaks with caulk and Kilz paint.

78. Knowing his "leak crew" conducted no investigation of the actual issues causing the water infiltration and made no substantive repairs, Hess misrepresented to Seven Springs that the leaks had been corrected.

79. After the leaks returned, Hess abandoned the project entirely.

80. Because of the sham work of the "leak crew" under the direction of Hess, the water infiltration at Southwind progressed and continued to cause substantial damage, amounting to millions of dollars in repairs that were ultimately undertaken by Seven Springs.

WHEREFORE, Plaintiff Seven Springs requests damages against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), plus interest, costs and attorneys' fees.

### Count IV

### Satisfaction and Enforcement of Judgment

81. Seven Springs incorporates by reference each and every averment contained in Paragraphs 1 through 80 as though fully set forth herein.

82. Based on the above-referenced allegations, Seven Springs has a legal right to enforce its Judgment against DBC by piercing the corporate veil of DBC and/or through DBC's alter egos.

83. Seven Springs is entitled to this Court's enforcement of Seven Springs' right to execute on the entire Judgment against Defendants, with payment of such Judgment proceeds to Trustee Sikirica consistent with the directives of the November 23, 2020 Bankruptcy Order.

WHEREFORE, Plaintiff Seven Springs requests damages against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), plus interest, costs and attorneys' fees, including all costs and fees associated with collection of the Judgment.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

Dated: January 11, 2021      /s/ *Victoria B. Kush*

Charles Gibbons (Pa. Id. No. 08284)
*Charles.Gibbons@bipc.com*
Victoria B. Kush (Pa. Id. No. 308424)
*Victoria.Kush@bipc.com*
Eric M. Spada (Pa. Id. No. 311446)
*Eric.Spada@bipc.com*
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
Fax: (412) 562-1041

*Attorneys for Seven Springs Mountain Resort, Inc.*