IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIANA SUBRICK, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| | ) | |
| WASHINGTON TROTTING | ) | |
| ASSOCIATION, LLC d/b/a THE | ) | **JURY TRIAL DEMANDED** |
| MEADOWS RACETRACK AND | ) | |
| CASINO. | ) | |
| | ) | |
| Defendant. | | |

## COMPLAINT

AND NOW COMES Plaintiff Briana Subrick ("Plaintiff" or "Ms. Subrick"), by and through her undersigned counsel, and brings this Complaint seeking legal and equitable relief for unlawful pregnancy discrimination, retaliation, and wrongful termination against Defendant Washington Trotting Association, LLC d/b/a the Meadows Racetrack and Casino (the "Meadows" or "Company" or "Defendant") in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as well as pendent state law claims arising under the provisions of the laws of this Commonwealth including the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA"), stating as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

2.  Venue is proper pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b) as Defendant resides in this District and the events giving rise to this suit occurred in this District.

1

3. Plaintiff timely exhausted her administrative remedies by filing a charge on October 1, 2020 with the United States Equal Employment Opportunity Commission ("EEOC") at Charge No. 533-2021-00001. Plaintiff's Charge was dual filed with the Pennsylvania Human Relations Commission and is incorporated by reference as if fully set forth herein. On February 22, 2021, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter) advising her of the right to bring this action. Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

## PARTIES

4. Plaintiff is a 34-year-old female individual who resides at 23 Anderson Lane, Weirton, West Virginia 16062.

5. At all relevant times, Defendant Washington Trotting Association, LLC d/b/a the Meadows Racetrack and Casino was and is a for profit organization under corporate ownership operating under the laws of and doing business within the Commonwealth of Pennsylvania with its principal place of business located at 210 Racetrack Road, Washington, Pennsylvania 15301.

## FACTS

6. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

7. Ms. Subrick worked in the Table Games Department at the Meadows Casino for over ten (10) years, from June of 2010 until her wrongful termination in August of 2020.

8. The most recent position held by Ms. Subrick was Assistant Floor Manager ("AFM").

9. On or about March 2, 2020, Ms. Subrick's physician confirmed she was nine (9) weeks pregnant.

10. Ms. Subrick's doctor provided her with a letter that outlined the following limitations that may require accommodation in the workplace:

   a. She is unable to stand for more than one hour without 15 minutes of sitting;
   b. She must be able to eat snacks every two or there hours throughout the day;
   c. She may not be ablet o lift more than 50 pounds more than three times per day;
   d. She must be able to consume water approximately every 10 minutes throughout the day;
   e. She must not be exposed to toxins;
   f. She may not be put at risk of being kicked in the stomach; and
   g. She may not climb ladders.

11. The letter went on to provide a list of suggested accommodations to meet the aforementioned restrictions.

12. Shortly thereafter, Ms. Subrick presented the letter to her immediate supervisor, Jeff Smith, who advised her to turn the letter into a Shift Manager.

13. Ms. Subrick then presented the letter to Meadows' Shift Manager, Dave Morris.

14. Ms. Subrick asked Mr. Morris what would happen if she turned the letter into Human Resources to request the suggested accommodations.

15. Mr. Morris advised Ms. Subrick not to turn in her physician's letter outlining her request for reasonable accommodations.

16. Mr. Morris told Ms. Subrick that the Meadows would likely be unwilling to accommodate her and would force her to take an unpaid leave, starting immediately, rather than commencing protected leave after she gave birth.

17. Mr. Morris is the supervisor of several decision makers at the Meadows, including Ms. Subrick's immediate supervisor, Jeff Smith.

18. Ms. Subrick also announced her pregnancy on Facebook on March 2, 2020.

19. Forty (40) Meadows' employees commented or "liked" her Facebook post announcing her pregnancy:

20. In addition, Ms. Subrick had conversations with at least twenty-four (24) other Meadows' employees regarding her pregnancy.

21. Nonetheless, Ms. Subrick was not afforded any opportunity to participate in the interactive process to see how she could be accommodated and continued to work without accommodation.

22. Ms. Subrick, having witnessed sex discrimination in the past in the form of supervisors giving new mothers a hard time regarding taking breaks to pump, believed Mr. Morris' comment that the Meadows would likely require her to take immediately leave, which she could not afford to do.

23. Ms. Subrick recalls Dara Trail requested an extra ten (10) minutes during her scheduled break, every other break, to pump.

24. Ms. Trail's Shift Manager, Kathy Mulford, advised Ms. Trail that she needed to cut her other breaks short to make up the time for these extended breaks in response to Ms. Trail's request.

25. Thereafter, the Meadows closed per the Governor's orders when the COVID-19 pandemic began.

26. In early June 2020, the Meadows re-opened and recalled certain employees to work.

27. Despite Ms. Subrick's seniority and excellent performance evaluations, she was not recalled and was terminated, effective August 15, 2020.

28. Ms. Subrick messaged her immediate supervisor, Mr. Smith, to discuss the decision.

29. Mr. Smith advised Ms. Subrick that he was told by Mr. Morris and Stacy Leclerc (also a Shift Manager) that they used a combination of reviews (which she never received prior to

COVID-19 for the previous calendar year), matrix scores and any documentation that was in each employees' file.

30. Mr. Smith informed Ms. Subrick that when he originally completed her review for the year, she was awarded a score of 3.34 of 4.0 *before* he was instructed to lower her score.

31. Mr. Smith also indicated to Ms. Subrick that he believed her score was lowered further thereafter (following the announcement of my pregnancy).

32. At the time the decision to terminate Ms. Subrick was made, at least five Pit Managers (the position immediately above Ms. Subrick's) were aware of Ms. Subrick's pregnancy including: Jeff Smith; John Eden; Lewis Dzingleski; Dana Rogers and Anthony Oberman.

33. At the time the decision to terminate Ms. Subrick was made, at least three Shift Managers (the position above Pit Manager) were aware of Ms. Subrick's pregnancy including: Joe Sauers, Olga Smith and Dave Morris.

34. At the time of the Meadows' decision to terminate Ms. Subrick, she was nearly six (6) months pregnant.

35. Prior to her termination, Ms. Subrick received correspondence that went out to all Meadows' employees stating that upon their return to work, "Team Member will be asked, if possible, during the first 90 days of return to work to defer time off. Not knowing opening business volumes and having limited staffing, it is essential that we can count on recall Team Members to show up for work as scheduled."

36. Due to her pregnancy, Ms. Subrick would have required time off during her first 90 days after returning to work, had she been recalled.

37. Ms. Subrick completed all job functions, roles and responsibilities of an ASF in at least a satisfactory manner, often exceeding expectations and having never received a negative performance evaluation.

38. Nonetheless, as soon as Ms. Subrick announced her pregnancy to a Company supervisor the Meadows began discriminating and retaliating against her due to her pregnancy, ultimately choosing to fire her, without cause.

## COUNT I
### Gender and Pregnancy Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Pregnancy Discrimination Act of 1978

39. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

40. Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, and the Pregnancy Discrimination Act prohibit adverse employment actions that are motivated by an employee's gender and prohibit an employer form discriminating against an employee based on pregnancy, childbirth or related medical conditions.

41. At all times relevant, Defendant was an "employer" within the meaning of Section 701(b) of Title VII.

42. Plaintiff was a pregnant female that required pregnancy-related accommodations to which she was therefore entitled to the protections of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978.

43. Defendant terminated Plaintiff's employment.

44. Defendant's termination of Plaintiff's employment was motivated by Plaintiff's gender, pregnancy and pregnancy-related medical condition, and was therefore discriminatory and

in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978.

45. At the time of Plaintiff's termination on August 15, 2020, Plaintiff's pregnancy and related medical conditions had not caused Defendants an undue burden.

46. At the time of Plaintiff's termination on August 15, 2020, Defendant had not engaged in a good faith interactive process to determine the burden, if any, that Plaintiff's pregnancy and maternity leave would cause Defendant.

47. Plaintiff's pregnancy, and any maternity leave taken by Plaintiff, would not have caused Defendant an undue burden.

48. Defendant's actions denied Plaintiff equal employment opportunities by subjecting her to different terms and conditions of employment than her male and non-pregnant similarly situated coworkers.

49. Defendant's unlawful and discriminatory practices complained of herein were intentional and done with malice or without reckless indifference to Plaintiff's federally-protected rights.

50. As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT II
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Pregnancy Discrimination Act of 1978**

51. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

52. Plaintiff engaged in protected conduct when she notified Mr. Smith and Mr. Miller of her need for accommodations as a result of her pregnancy related conditions.

53. As supervisors, both Mr. Smith's and Mr. Miller's conduct is imputed to the Meadows, along with the conduct of any other supervisor or manager who was aware of Ms. Subrick's condition.

54. The Meadows failed to accommodate Plaintiff's request for accommodations.

55. Plaintiff further engaged in protected conduct when she notified Mr. Smith and Mr. Miller of her need for maternity leave that would likely begin in or around October/November 2020.

56. Defendant retaliated against Plaintiff and subjected her to less favorable terms and conditions of employment because of Plaintiff's above-described conduct by terminating her employment.

57. Defendant engaged in the above-described retaliatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

58. As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to

compensatory damages for these injuries, in addition to the tangible economic losses she has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

### COUNT III
### Gender and Pregnancy Discrimination and Retaliation in Violation of the Pennsylvania Human Relations Act

59. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

60. This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this Count II arises out of the same facts, events and circumstances as in the above Counts, and therefore judicial economy and fairness dictate that this Count be brought in this same Complaint.

61. At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

62. Plaintiff engaged in a protected activity as described by Section 955(d) of the PHRA, as detailed *supra*.

63. By discriminating against Plaintiff for her gender and pregnancy and retaliating against Plaintiff for engaging in protected activity relating to her pregnancy, Defendant violated Section 955(a) of the PHRA.

64. The discriminatory conduct, retaliation and wrongful termination as described above, has caused Plaintiff substantial harm, including but not limited to lost wages, emotional

distress, mental anguish, anxiety, humiliation, embarrassment, pain and suffering, discomfort and inconvenience.

65. Defendant's failure to maintain a workplace free of gender and pregnancy discrimination and failure to protect Plaintiff from acts of retaliation to which Plaintiff was subjected was intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

66. Defendant's termination of Plaintiff violated the PHRA, 43 Pa. Cons. Stat. Ann. §955(a) et.

67. As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## PRAYER FOR RELIEF and DEMAND FOR JURY

WHEREFORE, Plaintiff demands judgment against Defendants, and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual, consequential, compensatory and punitive damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation, harassment, hostile treatment and wrongful termination of Plaintiff pursuant to the Title VII and the PHRA, plus interest;

b. That Plaintiff be awarded compensatory damages to compensate for all costs associated with the discrimination, retaliation, and wrongful termination including lost wages and medical expenses;

c. That Plaintiff be awarded nominal damages;

d. That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees;

f. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of Title VII;

g. That Defendant be ordered to reinstate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;

h. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Pennsylvania Human Relations Act;

i. That the Court award Plaintiff compensatory damages as a result of Defendant's violations of the Pennsylvania Human Relations Act;

j. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the Pennsylvania Human Relations Act;

k. That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits;

l. That Defendant be required to pay Plaintiff liquidated damages, in an amount equal to the back wages due and owing;

m. An award of prejudgment interest; and

n. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   May 20, 2021				Respectfully Submitted,


						*/s/ Stephanie L. Solomon*
						Stephanie L. Solomon, Esquire
						Pa. I.D. 208056
						HKM EMPLOYMENT ATTORNEYS LLP
						220 Grant Street
						Suite 401
						Pittsburgh, PA  15219
						412.760.7802
						ssolomon@hkm.com

						**JURY TRIAL DEMANDED**