## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| **MARSHA SIMONDS,** an individual; and **MATTHEW SIMONDS,** an individual, <br><br> Plaintiffs, <br> **vs.** <br><br> **CHRISTINE BOYER,** an individual; and **JAMES J. HANLEY, JR.,** an individual; and **ADAM THIMONS,** an individual; and **FRANCESCO ROSATO,** an individual; and **ELIZABETH MERKEL,** an individual; and **DONALD PASQUERELLI**, an individual and **CITY OF PITTSBURGH,** a municipal corporation; and **COUNTY OF ALLEGHENY,** a municipal corporation <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT IN CIVIL ACTION** <br><br> **Fed. R. Civ. P. 38(b)(1) Notice of Demand for Trial by Jury** |
| | **TODD J. HOLLIS LAW** <br> Todd Hollis, Esquire <br> Pa. Id. No. <br> 412.515.4483 \| ToddJHollis@gmail.com <br><br> 202 Penn Plaza <br> Pittsburgh Pennsylvania 15145 <br><br> **THE TRIAL LAW FIRM, LLC** <br> Mart Harris, Esquire <br> Pa. Id. No. 319504 <br> 412.588.0030 \| MH@TLawF.com <br><br> The Pittsburgher <br> 428 Forbes Avenue, Suite 1700 <br> Pittsburgh Pennsylvania 15219 |

## COMPLAINT

NOW COMES the Plaintiffs, Marsha Simonds and Matthew Simonds, by and through their undersigned counsel, to file the within Complaint in Civil Action, and in support thereof avers that:

**Parties, Jurisdiction, and Venue**

1.      The first Plaintiff is Marsha Simonds ("Mrs. Simonds"). Mrs. Simonds is an adult individual who resides in Allegheny County, Pennsylvania.

2.      The second Plaintiff is Matthew Simonds ("Mr. Simonds"). Mr. Simonds is an adult individual who resides in Allegheny County, Pennsylvania.

3.      The first Defendant is Christine Boyer ("Boyer"). Boyer is an adult individual who works and resides in Allegheny County Pennsylvania.

4.      The second Defendant is James J. Hanley, Jr. ("Hanley"). Hanley is an adult individual who works and resides in Allegheny County Pennsylvania.

5.      The third Defendant is Adam Thimons ("Thimons"). Thimons is an adult individual who works and resides in Allegheny County Pennsylvania.

6.      The fourth Defendant is Francesco Rosato ("Rosato"). Rosato is an adult individual who works and resides in Allegheny County Pennsylvania.

7.      The fifth Defendant is Elizabeth Merkel ("Merkel"). Merkel is an adult individual who works and resides in Allegheny County, Pennsylvania.

8.      The sixth Defendant is Donald Pasquarelli ("Pasquerelli"). Pasquerelli is an adult individual who works and resides in Allegheny County, Pennsylvania.

9.      The seventh Defendant is the City of Pittsburgh ("the City"). The City is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania.

10.     The eighth Defendant is the County of Allegheny ("the County'). The County is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania.

11.     The Plaintiffs bring this lawsuit to redress violations of, *inter alia*, 42 U.S.C. § 1983. Thereby this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

12.     The events and omissions which give rise to the claims asserted in this lawsuit occurred in the geographical territory of this court, in or around Pittsburgh Pennsylvania. Therefore, pursuant to 28 U.S.C. § 1391(b), this district court is the proper venue for this lawsuit.

13.     All Defendants reside and/or do business in Allegheny County, Pennsylvania. Therefore, this court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4.

14.     The Plaintiffs have satisfied all necessary conditions precedent to the filing of this lawsuit.

**Facts of the Case- Mrs. Simonds' Ongoing Disputes with Hanley**

15.     All other paragraphs of this lawsuit are incorporated.

16.     In or around 2017, Mrs. Simonds acquired ownership of property located at or near 4375 Murray Avenue in the Greenfield area of the City of Pittsburgh.

17.     Mrs. Simonds chose to use her property to provide a parking option for local businesses.

18.     Mrs. Simonds entered into numerous contracts with her tenants to provide them the use of her property, so as to allow those tenants to offer off-street parking options for their own customers.

19.     Hanley maintains an office and Courtroom at 4371 Murray Avenue in the Greenfield area of the City of Pittsburgh.

20.     The front entrance to Hanley's lobby requires his visitors to walk across Mrs. Simonds' property.

21.     In or around 2018, Hanley and/or his family owed Mrs. Simonds' mother twenty thousand ($20,000.00) dollars for a personal business matter.

22.     Hanley resisted payment of this debt, to the point that Mrs. Simonds' family was forced to threaten a lawsuit and had retained counsel to file said lawsuit against Hanley.

23.     In response, Hanley finally tendered payment.

24.     The events which followed were designed to retaliate against the Plaintiffs and their family.

**Harassment & Intimidation of the Simonds Family**

25.     Numerous persons attending court, including but not limited to police officers, district attorneys, court officials, constables and other county and government officials would park their cars on Mrs. Simonds' property, despite Mrs. Simonds' multiple requests to abate this action.

26.     Mrs. Simonds attempted on numerous occasions to communicate to Hanley and Boyer that they should not instruct visitors to park on her property, because, *inter alia*, those spots were rented to her tenants.

27.     Hanley and Boyer began to use their relationship with the City police to harass and intimidate the Simonds family, in a manner designed to punish them and suppress their Constitutional rights.

28.     Hanley, his Court, and specifically police officers, constables, and inspectors visiting his Court room, systematically ignored Mrs. Simonds' requests as they continued to utilize her private property without compensation. Upon information and belief, Hanley and his

4

staff instructed visitors that they could park on Mrs. Simonds' property specifically in order to interfere with her property rights.

29.     Within the context of an ongoing lawsuit at Case Number GD 18-1221 & LT 17-1155 in the Court of Common Pleas of Allegheny County, the dispute regarding the use of Mrs. Simonds' property was litigated.

30.     On or about August 22, 2019, Judge Klein entered an Order (by consent) that Mrs. Simonds would rent two (2) parking spaces to the Defendant Allegheny County for the benefit of Hanley and the visitors to his Court.

**Facts- August 27, 2019**

31.     All other paragraphs of this lawsuit are incorporated.

32.     On or about August 27, 2019, at or around 9:19 a.m. Mrs. Simonds noticed a City vehicle operated by Mr. Gillespie parked in her lot in an unauthorized space.

33.     Mrs. Simonds approached Mr. Gillespie and asked him to move to one of parking spaces previously designated for Hanley's Court (both of which were open and available). She explained that if he did not, he could get cited for illegally parking and/or his vehicle could be towed.

34.     Mr. Gillespie responded that he had "been parking here for weeks."

35.     Mrs. Simonds explained that there had "been some changes" (referencing the August 22, 2019 court order) and asked him to move the vehicle again.

36.     Mr. Gillespie did not move his car, but instead went inside Hanley's Court for approval to part in the lot.

37.     A few moments later, Mr. Gillespie came back outside and said that a magistrate employee told him that he can "stay where [he] is" and that if Mrs. Simonds had an issue with that, she would "need to let [Hanley] know."

5

38.     Mrs. Simonds then entered Hanley's court lobby, and went up to the intake window, but no one was at the window.

39.     After waiting for a few moments no one came to the window and Mrs. Simonds decided that she would have a more productive conversation if she had a copy of Judge Klein's order before she had a conversation with any court representatives.

40.     Mrs. Simonds moments later left the lobby to retrieve a copy of the order.  She later returned to Hanley's lobby.

41.     This time, Boyer was standing at the window in the front of the lobby.

42.     When Boyer saw Mrs. Simonds, she waived Mrs. Simonds away as if she were a bother.

43.     Mrs. Simonds explained that she was there to deliver a copy of the Order (since it was only five (5) days old, she thought it might not yet have been communicated to everyone) and therein, attempted to give Boyer the order.

44.     Mrs. Simonds asked Mr. Gillespie to again move his vehicle, as she would be forced to call the police to have it cited and towed (as per the Order).

45.     Boyer instructed Mr. Gillespie to leave his car where it was, and that Mrs. Simonds should leave immediately.

46.     Mrs. Simonds said "fine" and informed Boyer and Mr. Gillespie that she had no choice but to call the police to cite Mr. Gillespie. Mrs. Simonds immediately left the lobby and while walking back outside, called 911.

47.     Approximately twelve (12) seconds after Mrs. Simonds called 911, Boyer called 911.

48.     On her 911 call, Boyer falsely reported to the 911 operator that Mrs. Simonds:

   a.   Refuses to leave the court;

b.  Comes in to cause a disturbance;

c.  Is inside now;

d.  Is in the lobby; and

e.  Is yelling at [Boyer].

49.     Boyer was aware that her statements were false at the moment that she made them.

50.     For instance, when Boyer stated, "she refuses to leave the court," "is inside now," and "is in the lobby" Mrs. Simonds had already left the lobby and Boyer knew that Mrs. Simonds was no longer in the lobby.  Upon information and belief, Boyer omitted this information in order to cause Mrs. Simonds to be arrested.

51.     Boyer was aware that her statement that Mrs. Simonds "is yelling at [Boyer]" was false.  Mrs. Simonds was not, and had not at any point yelled at Boyer or anyone else.  Upon information and belief, Boyer communicated this information in order to cause Mrs. Simonds to be arrested.

52.     Responsively, several police units responded to Boyer's 911 call with lights and sirens.

53.     Mrs. Simonds, unaware that Boyer called 911, was waiting in the parking lot for the police to respond to her own, earlier, 911 call.

54.     When the police arrived, Mrs. Simonds attempted to point the officers in the direction of the illegally parked cars (additional cars entered the lot and illegally parked during this time), but they all ignored her as they entered Hanley's lobby.

55.     A short while later, Thimons exited the Court, about 100 feet away from where Mrs. Simonds was standing.

56.     Thimons' placed his hand was on his gun as he approached Mrs. Simonds and ordered her to turn around because she was "being arrested and taken to jail."

57.     Mrs. Simonds pleaded with Thimons to contact Commander Hermann who would confirm Judge Klein's order, and that he directed her to call the department of emergency services.

58.     Thimons took unreasonable forceful measures towards Mrs. Simonds, which upon information and belief, had the purpose to aid and abet Hanley and his staff's retaliation against Mrs. Simonds. Specifically, Thimonds:

    a.     used forceful actual physical contact with Mrs. Simonds' body, on her mid-back when she was not resisting or trying to escape or otherwise disobey his orders;

    b.     slammed her body onto the hood of a vehicle when she was not resisting or trying to escape or otherwise disobey his orders;

    c.     grabbing her arms when she was not resisting or trying to escape or otherwise disobey his orders;

    d.     forcefully wrenching them behind her back when she was not resisting or trying to escape or otherwise disobey his orders;

    e.     and put Mrs. Simonds' into handcuffs.

59.     Thimons placed Mrs. Simonds into his police vehicle with her hands cuffed behind her back, therein, forcing her to sit on her hands. These actions were visible to the general public including but not limited her employees and tenants.

60.     For the next several minutes, officers were going in and out of Hanley's Court. At some point, while still in the police car, Mrs. Simonds overheard Officer Michael Burns stating, "this is what happens when you mess with the Court."

8

## Facts- The Conspiracy

61.    Upon information and belief, Boyer, Hanley, Merkel, Rosato, Thimons, and Pasquarelli held a private meeting in the back office of Magisrate Hanley's Court room.

62.    Upon information and belief, during that meeting, the following statements were made:

    a.  Detective Pasquarelli stated: I'm just looking after his benefit too, I'm not sure if [the arrest] should go through or not…but a physical arrest I don't know about that...I don't want this to bite [Thimons] in the ass:

    b.  Boyer states there going to keep coming here for parking;

    c.  Hanley states "there's a court order for parking, but she shouldn't be here; this [the arrest] was done ass backwards, she's got commander Hermann's cell phone number for Christ sake.

    d.  Merkel asks Hanley if he's ok with Mrs. Simonds being arrested by citation even though he was not a witness to any of the events related to Mrs. Simonds arrest incident.

    e.  Merkel then realized that her body cam was recording the conversation and quickly turned it off.

    f.  Rosato, Thimons, and Pasquarelli collectively schemed to find the best charge to falsely subject Mrs. Simond's to criminal charge to insulate Mr. Thimons from a civil action for wrongful arrest and/or excessive force.

63.    Upon information and belief, including but not exclusively limited to the fact that Merkel realized her body camera was recording the meeting, and she interrupted the recording, and then later, re-engaged the recording, that additional statements were made by the Defendants

9

in that meeting evidencing an intent to retaliate against Mrs. Simonds by way of agreeing to

falsely charge and prosecute her.

64.     Acting under the color law the parties collectively schemed to intimidate Mrs.

Simonds and her family by using the threat of criminal prosecution, to:

    a.   Punish her for taking legal action against Magistrate Hanley and Christine Boyer in

       their individual capacities.

    b.   Instituting civil litigation against the County and Hanley regarding the ongoing

       parking lot matter.

    c.   Protect Christine Boyer from civil and/or criminal litigation regarding the false

       defamatory call she made to the department of emergency services.

65.     Upon information and belief, the City has a custom or practice of levying false

charges against persons who are the victims of excessive force, in order to provide cover for the

police officers who had committed said excessive force and/or to otherwise unduly influence

citizens against the exercise or attempted enforcement of their constitutional rights.

66.     Upon information and belief, Hanley personally approved the plan to cite Mrs.

Simonds for disorderly conduct even though he was not a witness to the incident and possessed

no objective facts regarding the incident.

67.     Hanley used his relationship as a Court of Common pleas magistrate judge to

influence the police to arrest and or convict Mrs. Simonds in violation of her Civil and

Constitutional rights.

68.     Following Hanley's approval to cite Mrs. Simonds for disorderly conduct, Boyer,

Hanley, Merkel, Rosato, Thimons, and Pasquarelli took actions to effectuate their agreement to

falsely charge her in order to:

10

a.   protect Thimons from a civil action for wrongful arrest and/or excessive force;
through the use of intimidation and threats of criminal prosecution, and to;

b.   punish her for threatening to take legal action against Hanley in his individual
capacity;

c.   punish her for the litigation involving the parking lot, and to;

d.   protect Boyer from the consequences of making a false call to 911.

69.    In furtherance of this conspiracy, Thimons issued a criminal citation against Mrs. Simonds, knowing that the facts alleged in it were false and inaccurate. See ***Exhibits 1 and 2*** (partially reproduced below): *Citations against Mrs. Simonds*:





70.    Mr. Gillespie never told Thimons that Mrs. Simonds yelled, used obscenities, that he felt threatened, or that Mrs. Simonds exhibited erratic behavior, but authored them to further his goal of covering up his own violent behavior and unreasonable arrest.

71.    In furtherance of this conspiracy, Rosato authored a police report, knowing that the facts alleged in it were false and inaccurate. See ***Exhibit 3*** (partially reproduced below):

1    *Rosato Police Report*:

2

3 Instead of leaving, she then began to harass City of Pittsburgh PLI Inspector Michael GILLESPIE, who refused to engage her due to her aggressive behavior. He stated that she was somewhat threatening and was not sure what further aggressive actions she may have taken, due to her anger.

6       72.    At the time of Rosato's authoring of his report, he had never been told by Mr.

7 Gillespie that Mrs. Simonds was in any way threatening, that she had taken any aggressive

8 actions, or that she was angry, but authored it as such to further his goal of covering up Thimons'

9 violent behavior towards Mrs. Simonds.

10       73.    In furtherance of the conspiracy, Hanley falsely reported that Mrs. Simonds

11 "came into the building and was screaming obscenities at the staff" and that "everyone had to

12 stop doing what they were doing because of the scene she was making." At the time of these

13 statements, Hanley knew or should have known them to be untrue, but made them anyway to

14 further his goal of punishing Mrs. Simonds for threatening to sue him, and in support of his

15 staff's false 911 call and reports to the responding officers.

16       74.    In furtherance of the conspiracy, on or about November 2, 2019, Boyer falsely

17 testified that:

18       a.   "[Mrs. Simonds] came in[to Hanley's lobby] yelling at Inspector Gillespie";

19       b.   "[Mrs. Simonds] was yelling at me";

20       c.   Boyer had to call 911 before Mrs. Simonds would leave;

21       d.   The waiting area of the Court was disrupted by Mrs. Simonds;

22       e.   "[Mr. Gillespie] came in [to Hanley's lobby] and said, this lady's yelling at me out

23         there.";

24       f.   "[Mr. Gillespie said] there's a lady out there screaming at me.";

12

25

g.   "[Mrs. Simonds is] yelling at me";

h.   "[Boyer] left the window because [Mrs. Simonds] is yelling at [Boyer].";

75.     In furtherance of the conspiracy, on or about June 7, 2021, and November 2, 2019 it is believed and therefore averred that Boyer intentionally testified falsely to cover up her own actions and indiscretions.

76.     In furtherance of the conspiracy, and at Hanley's request, Rosato and Pasquarelli used their authority under the color of law to harass and intimidate Mrs. Simonds by ordering that "under no circumstances was she to re-enter Judge Hanley's office at any time for any reason." effectively infringing upon her Constitutional right to access the courts.

77.     On or about June 7, 2021, Judge Terrance O'Brien of the Court of Common Pleas of Allegheny County granted Mrs. Simonds' mid-trial motion for Judgment of Acquittal, and therein, found her to be not guilty.

78.     These causes of action follow:

## COUNT I

### 42 U.S.C. § 1983- Fifth Amendment Taking

### Mrs. Simonds v. Hanley, Boyer and Allegheny

79.     All other paragraphs of this lawsuit are incorporated.

80.     The Fifth Amendment to the United States Constitution guarantees that the government may not take personal property for public use without just compensation.

81.     On or about August 27, 2019, Hanley, Boyer, and the County of Allegheny took Mrs. Simonds' personal property, specifically, her parking spaces, without compensation, when Boyer instructed, on Hanley's behalf and authority, that Mr. Gillespie did not have to move his vehicle, despite the August 22, 2019 Court order from Judge Klein.

82.     No Defendant offered or tendered compensation for their inducement of Mr. Gillespie to use Mrs. Simonds' property.

83.     Upon information and belief, including but not specifically limited to the availability, at that time, of authorized parking spaces, for visitors of Hanley's court, Boyer's actions were malicious and knowing.

84.     Boyer's actions were in the context of her employment with Allegheny, and under the color of her authority as an Allegheny employee.

85.     As a direct and proximate result of Hanley, Boyer and the County' actions, Mrs. Simonds was injured, and is therefore entitled to damages.

**COUNTS II-IV**

**42 U.S.C. § 1983- First and Fifth Amendment Retaliation**
**42 U.S.C. § 1985(2)- Conspiracy to Obstruct Justice**
**Common law of Pennsylvania- Civil Conspiracy**

**Mrs. Simonds v. Boyer, Hanley & Allegheny**

86.     All other paragraphs of this lawsuit are incorporated.

87.     Mrs. Simonds engaged in protected activity under the First and Fifth Amendments to the United States Constitution on or about August 22, 2019, when in the course of a lawsuit, Mrs. Simonds agreed to allow the Allegheny the use of two (2) of her parking spaces on her lot.

88.     Mrs. Simonds engaged in further protected activity under the First and Fifth Amendments to the United States Constitution when on or about August 27, 2019, Mrs. Simonds asked Boyer, on behalf of Hanley, to respect her personal property rights as agreed and ordered to on August 22, 2019.

89.     Immediately following Mrs. Simonds' protected activity, these Defendants agreed to and took materially adverse actions against Mrs. Simonds because of her protected activities, including but not limited to:

  a.   Making a false report to 911;

  b.   Making false statements to responding police officers;

  c.   Agreeing to falsely charge Mrs. Simonds with crimes;

  d.   Authoring false citations;

  e.   Authoring false police reports; and

  f.   Tendering false testimony to the Court.

90.     As a direct and proximate cause of these Defendants' actions, Mrs. Simonds was injured, and is therefore entitled to damages.

**COUNTS V-VII**

**42 U.S.C. § 1983- Fourth Amendment Excessive Force**
**Common law of Pennsylvania- Assault**
**Common law of Pennsylvania- Battery**

**Mrs. Simonds v. Thimons**

91.     All other paragraphs of this lawsuit are incorporated.

92.     On or about August 27, 2019, Thimons placed Mrs. Simonds in imminent fear of offensive bodily contact when he walked towards her, while yelling that he was arresting and taking her to jail, with his hand on his gun.

93.     On or about August 27, 2019, Thimons came into offensive bodily contact with Mrs. Simonds when he pushed into her mid-back, violently forcing her body onto the hood of her vehicle, grabbed her arms and forcefully wrenched them behind her back, and put Mrs. Simonds into handcuffs. He then put Mrs. Simonds into a police vehicle with her hands cuffed behind her back, therein, forcing her to sit on her hands.

94.     The contact made with Mrs. Simonds was under the color of state law, and was objectively unreasonable because Mrs. Simonds complied with all of Thimons' orders prior to Thimons' use of force and did not make any threats or aggressive movements prior to Thimons' use of force.

95.     No objectively reasonable police officer in Thimons' position would reasonably believe that the force used against Mrs. Simonds by Thimons was necessary and/or not excessive.

96.     Mrs. Simonds did not consent to Thimonds' actions as described in this count, though she did acquiesce to his arrest.

97.     As a direct and proximate result of Thimons' actions, Mrs. Simonds was injured, and is therefore entitled to damages.

16

**COUNT VIII**

**Common law of Pennsylvania- Negligent Infliction of Emotional Distress**

**Mrs. Simonds v. Thimons & Boyer**

98.     All other paragraphs of this lawsuit are incorporated.

99.     As of and on August 27, 2019, Boyer and Thimons had a duty and responsibility of care to, among other, Mrs. Simonds, to not act in a manner in which it would reasonably cause emotional distress to others, including Mrs. Simonds.

100.     On or about August 27, 2019, Boyer breached her duty and responsibility of care to Mrs. Simonds when she made false statements to 911 and responding police officers.

101.     On or about August 27, 2019, Thimons breached his duty of care and responsibility to Mrs. Simonds, when he assaulted and battered her in the course of his commission of excessive force discussed above.

102.     On or about August 27, 2019, Thimonds breached his duty and responsibility of care to Mrs. Simonds, when he falsely charged her with disorderly conduct.

103.     On or about August 27, 2019, Boyer breached her duty and responsibility of care to Mrs. Simonds when she allowed Thimonds to author and advance false information in his citations.

104.     On or about November 2, 2019 and on or about June 7, 2021, Boyer breached her duty and responsibility of care to Mrs. Simonds when she tendered false testimony to the Court in order to ensure Mrs. Simonds' false and retaliatory convictions.

105.     As a direct and proximate result of Thimons' breach, Mrs. Simonds was physically injured, for which she was treated, and due to said physical injury, also suffered severe mental injury, for which she was treated.

17

106.    As a direct and proximate result of Mrs. Simonds' injuries, she is entitled to damages.

## COUNT IX

### Common law of Pennsylvania- Loss of Consortium

### Mr. Simonds v. Thimons

107.    All other paragraphs of this lawsuit are incorporated.

108.    Mr. Simonds is, and on August 27, 2019, was, married to Mrs. Simonds.

109.    As a direct and proximate result of Mr. Thimons actions against Mrs. Simonds as discussed above, Mr. Simonds was deprived of the marital comfort and relations of Mrs. Simonds.

110.    Mr. Simonds was injured by the denial of his marital relationship, and is therefore entitled to damages.

**COUNTS X-XIII**

**42 U.S.C. § 1983- Fourth Amendment Wrongful Initiation of Proceedings**
**42 U.S.C. § 1985(2)- Conspiracy to Obstruct Justice and Intimidate**
**Common law of Pennsylvania- Civil Conspiracy and Malicious Prosecution**

**Mrs. Simonds v. Boyer, Hanley, Thimons, Rosato, and Merkel**

111.    All other paragraphs of this lawsuit are incorporated.

112.    The Defendants, in concert, initiated a criminal case against Mrs. Simonds without probable cause using information they knew or should have known to be false.

113.    At the time of the filing of the charges, Thimons knew the information stated in the citations was false and misleading based upon his presence at the August 27, 2019 meeting where the conspiracy to falsely charge Mrs. Simonds was birthed by the Defendants.

114.    The purpose of the conspiracy was, in part, in order to protect Thimons from a civil action for wrongful arrest and/or excessive force and to punish Mrs. Simonds for her protected activities discussed above, by employing intimidating tactics and retaliatory criminal prosecution, thereby violating 42 U.S.C. § 1985(2).

115.    In effectuating the conspiracy, one or more Defendants entered Mrs. Simonds' property in order to deprive her directly of her rights under, *inter alia*, the Sixth and Seventh Amendments to the United States Constitution, as a member of the public, view Court proceedings, by prohibiting Mrs. Simonds from entering the Court "at any time for any reason," thereby violating 42 U.S.C. § 1985(3).

116.    No reasonable officer in Defendants' positions would reasonably believe that arresting and/or filing false charges was a reasonable action to take under any circumstances.

117.    These Defendants supported Thimons' actions described herein by providing false statements to the police, conspiring, and/or the authoring of false police reports. ***Bristow v. Clevenger***, 80 F.Supp.2d 421, 432 (M. D. Pa. 2000) (stating that "[I]t is not necessary that [a]

defendant initiate the proceedings himself. Liability for malicious prosecution can also attach when [a] defendant influences a third party to initiate the proceedings.").

118.    On or about June 7, 2021, the criminal prosecution terminated in Mrs. Simonds' favor, when her mid-trial Motion for Judgment of Acquittal was granted, and the Honorable Terrance O'Brien entered a finding of not guilty.

119.    As a direct and proximate result of Defendants' actions, Mrs. Simonds was injured and is therefore entitled to damages.

## COUNTS XIV-XVIII

**42 U.S.C. § 1983- Violation First, Sixth, and Seventh Amendment Access to the Courts**
**42 U.S.C. § 1985(3)- Conspiracy to Deprive Rights**
**Common law of Pennsylvania- Civil Conspiracy**

### Mrs. Simonds v. Boyer, Hanley, and Rosato

120.    All other paragraphs of this lawsuit are incorporated.

121.    On or about August 27, 2019, these Defendants agreed to assist Hanley's retaliatory deprivation of Mrs. Simonds' right to assemble and/or access the courts.

122.    Rosato made an overt act in furtherance of this agreement when he told Mrs. Simonds that she could not enter the court "at any time for any reason" and tried to convince Mrs. Simonds that she had no right to file a complaint against officer Thimons at Hanley's request.

123.    As a direct and proximate result of Rosato's statement in furtherance of the conspiracy, Mrs. Simonds has been denied access to the Court.

124.    Mrs. Simonds has been injured and is therefore entitled to damages and injunctive relief.

## COUNT XIX-XX

### 42 U.S.C. § 1983- Sixth Amendment Right to Present Evidence
### Common law of Pennsylvania- Civil Conspiracy

### Mrs. Simonds v. Merkel, Thimons, Rosato, Boyer, and Hanley

125.    All other paragraphs of this lawsuit are incorporated.

126.    On or about April 28, 2021 Mrs. Simonds served a subpoena upon Merkel to attend court and testify on May 11, 2021.

127.    Upon information and belief, including but not exclusively limited to the fact that Merkel did not come to court, at some point between April 28, 2021 and May 11, 2021, Merkel agreed with one or more of the other Defendants to not come to court as required by the subpoena in order to avoid providing testimony tending to show that Mrs. Simonds was not guilty.

128.    At that time, the Court held over all the subpoenas so that they did not need to be re-issued.

129.    In response, the district attorney assumed the responsibility to ensure all the police officer witnesses were apprised of and present at the June 7, 2021 re-scheduled hearing.

130.    Upon information and belief, including but not limited to the fact that, on or about June 7, 2021, despite not having standing to do so, the district attorney attempted to prevent Judge O'Brien from ordering Merkel's presence, Allegheny County was aware of and supported the Defendants' plan for Merkel to ignore her obligation to appear in court on June 7, 2021 in order to avoid providing testimony tending to show that Mrs. Simonds was not guilty.

131.    As a direct and proximate result of these Defendants' actions, Mrs. Simonds was injured and is entitled to nominal and punitive damages.

## COUNT XXI

**42 U.S.C. § 1983- *Monell Liability* for "The Thin Blue Line," a Custom and Practice of Police Misconduct**

**Mrs. Simonds v. City of Pittsburgh**

132.    All other paragraphs of this lawsuit are incorporated.

133.    All around the country, for years, police officers have been known to commit acts of misconduct, including but not limited to lying. in order to cover up their misdeeds and to protect their own. This phenomenon is known as "the thin blue line."

134.    On or about December 1, 2015, Officer Nicholas M. Buckley of the San Francisco police department and other officers used force on an individual who supposedly resisted arrest. On or about April 13, 2016, Officer Buckley testified about that night. Video evidence proved his testimony was false, and Judge Charles Breyer dismissed the charges stating, "[t]he video was unequivocal in rebutting everything the police officer testified to – at least to all the pertinent details."

135.    On or about April 4, 2015, Officer Michael Slager of the North Charleston South Carolina police department killed Walter Scott via gunfire, who supposedly grabbed the officer's Taser and pointed it at the officer. Video evidence proved his report was false, because it showed Slager shooting Mr. Scott in the back from 17 feet away, and then planting the Taser by Mr. Scott's dying body.

136.    On or about October 20, 2014, Officer Jason Van Dyke of the Chicago police department shot Laquan McDonald sixteen (16) times, claiming that Mr. McDonald lunged at the officer with a knife. As many as five (5) other Chicago police officers provided statements that Mr. McDonald lunged at Van Dyke with a knife. Video evidence proved these statements to be false, because it showed Mr. McDonald walking away when he was shot to death.

24

137.    On or about June 7, 2012, Officer Sean Courter and Officer Orlando Trinidad of the Bloomfield New Jersey police department charged Marcus Jeter for supposedly assaulting the officers and trying to get one of their guns. Video evidence proved these charges to be false, because it showed Mr. Jeter being pulled from his vehicle and immediately assaulted. Officer Albert Sutterlin in an effort to protect Courter and Trinidad pled guilty to evidence tampering.

138.    On or about August 7, 2014, Marion County Florida Sheriff Deputies James Louis Amidei, Trevor Wade Fitzgerald, Adam Ray Crawford, Cody Hoppel, and Jesse Alan Terrell claimed that Derrick Price resisted arrest, and therefore they had to use force. Video evidence proved these charges to be false, because it showed Mr. Price on the ground surrendering as the Deputies punched and kicked him.

139.    On or about April 5, 2016, Officer Jesus Santiago-DeJesus of Birdsboro Pennsylvania police department accused Marcelina Cintron-Garcia of assaulting him. Video evidence proved these charges to be false, because it showed Santiago-DeJesus stealing and smashing Ms. Cintron-Garcia's cell phone for her recording his false traffic stop

140.    Police misconduct and lying also exists in Pittsburgh, Pennsylvania.

141.    On or about January 26, 2018, Pittsburgh police officer Margaret Sherwood was charged by a Pennsylvania grand jury with false swearing, unsworn falsifications, tampering with evidence, obstruction, hindering apprehension, and false imprisonment across numerous cases, including but not limited to Commonwealth v. Corey Clark where Sherwood lied about other officers' statements regarding the identification of a suspect.

142.    On or about April 6, 2018, Pittsburgh police officer Kaelen T. O'Connor was charged with obstructing the administration of law, official oppression, hindering apprehension or prosecution, and unsworn falsification, when she, along with as many as seven other

1    Pittsburgh police officers attempted to cover-up fellow officer Robert Kramer's off-duty road

2    rage incident against a citizen.

3         143.    On or about December 5, 2011, the jury trial of Pittsburgh police officer Ken

4    Simon began, wherein he was accused of lying, in order to frame two (2) people.

5         144.    On or about March 12, 2019, Pittsburgh police officer Antoine Cain pled guilty to

6    two (2) counts of making false statements to government agents.

7         145.    On or about June 29, 2020, the City was sued and accused of, *inter alia*,

8    "disseminated fragrant lies to conceal and/or justify the [Pittsburgh police]'s shameless use of

9    force against peaceful protestors…numerous videos demonstrate that these statements [that the

10   force was justified] were patently false."

11        146.    The City of Pittsburgh has a custom and practice of lying in their police reports, to

12   other law enforcement agents, and in court to conceal misdeeds of their own.

13        147.    Although in particularly egregious cases which are publicly reported in the news

14   the City of Pittsburgh responds against offending officers, the City does not otherwise maintain

15   policies or procedures to combat this custom and practice, colloquially known as "the thin blue

16   line."

17        148.    Upon information and belief, including but not exclusively limited to the fact that

18   on or about November 2, 2019, Mr. Michael Gillespie's testimony contradicted:

19        a.   Boyer's 911 call;

20        b.   statements to the police, and court testimony;

21        c.   Rosato's police report; and

22        d.   Thimons' citations against Mrs. Simonds,

23

24

25
                                    26

as a direct and proximate result of the custom and practice of using untruthful information to substantiate or justify illegal police tactics to suppress the rights of Mrs. Simonds she was charged and prosecuted as discussed in this lawsuit.

149.    Mrs. Simonds was injured and therefore entitled to damages.

WHEREFORE, the Plaintiffs respectfully request judgment in their favor and against that of the Defendants, and that nominal damages, economic and non-economic compensatory damages, punitive damages, attorney's fees, and costs be awarded, jointly and severally as appropriate.

Respectfully submitted on June 30, 2021:

**THE TRIAL LAW FIRM, LLC**

**By:** _____
Mart Harris, Esquire
Trial Lawyer for Plaintiffs