# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN WALTON, | ) |
| | ) |
| Plaintiff, | ) No. |
| | ) |
| vs. | ) |
| | ) |
| WESTMORELAND COUNTY, Pennsylvania, and GINA CERILLI, COMMISSIONER, in her individual capacity, | ) ) ) ) |
| | |
| Defendants, | |

## COMPLAINT

Plaintiff John Walton, by undersigned counsel, files this Complaint stating as follows:

### PARTIES

1. John Walton resides in Mount Pleasant Township, Westmoreland County, Pennsylvania. Walton was the Warden of the Westmoreland County Prison from 2003 until his constructive discharged on November 6, 2020. At the time of his constructive discharge, Walton was 62 years old.

2. Defendant Westmoreland County, Pennsylvania is a political subdivision of the Commonwealth of Pennsylvania. The County's principal place

of business is located at 102 Courthouse Square Main Street, Greensburg, PA 15601.

3. Defendant, Gina Cerilli, is an adult individual who is County Commissioner of Westmoreland County. She is a state actor with hiring and firing authority over employees in Westmoreland County. She is also a member of the Westmoreland County Prison Board. At all times relevant she operated pursuant to authority granted or delegated to her under Pennsylvania law, and therefore acted under color of state law. She is sued in her individual capacity for damages. Her principal place of business is 102 Courthouse Square Main Street, Greensburg, PA 15601.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the present action pursuant to 42 U.S.C. §1983; Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 42 U.S.C. § 2000e-5, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626; 28 U.S.C. §§ 1331 and 1343. This Honorable Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

5. Walton filed a complaint with the EEOC on September 11, 2019. Walton received a Right to Sue letter from the U.S. Department of Justice on June 15, 2021. This Complaint is timely filed.

6.     Venue is appropriate in this district, as Westmoreland County is a political subdivision located within this district and the events upon which the allegations in the Complaint are based occurred within this district.

## FACTUAL BACKGROUND

7.     Walton was employed as the Warden of the Westmoreland County Prison for more than 17 years.  The position of Warden in no way requires political affiliation or patronage.  Walton's job performance as the Warden was exemplary and he received commendations for his job performance throughout his tenure as the Warden.

8.     On November 6, 2020, Walton resigned and retired because he could no longer tolerate the relentless and baseless harassment, discrimination, and retaliation he endured due to Commissioner Cerilli's actions.

9.     After receiving Walton's resignation letter detailing Cerilli's illegal conduct and his constructive discharge, Prison Board Member and Westmoreland County Controller, Jeffrey Balzer, gave an on-camera interview to KDKA news in which he said of Walton's tenure: "I think he's been outstanding."  In describing Walton's reasons for resigning and his constructive discharge Balzer said: "His thoughts are well deserved, I mean, I understand where he's coming from."  Balzer went on to explain: "We gave institutional raises to everyone in the prison except

for the top two guys, you can see where that could be the straw that broke the camel's back."

10. From the time that Gina Cerilli became a County Commissioner in 2015, until his constructive discharge on November 6, 2020, Walton was subjected to constant harassment and a pervasive hostile work environment due to a relentless barrage of baseless attacks from Cerilli.

11. In June of 2016, then rookie Commissioner Cerilli directed Walton to make several political hires. Walton refused to make discriminatory political hires and promotions of candidates who were politically associated with Cerilli. After Walton objected to Cerilli's proposed hiring practices that would have discriminated against qualified minorities and females who would have been adversely impacted by the political patronage, Cerilli embarked on a never-ending campaign of discrimination, retaliation, and character assassination in an effort to harm and get rid of Walton.

12. Cerilli moved to fire Walton in June and July of 2016.

13. Cerilli weaponized the Westmoreland County Department of Human Resources with unfounded complaints against Walton and sham investigations, as payback for Walton's objection to her discriminatory hiring practices and directives.

14. Cerilli attacked Walton publicly based on his sex. She made public statements suggesting that Walton could not take orders from a "female superior." Cerilli referred to Walton publicly as a "Neanderthal."

15. In November of 2018, Cerilli tried again to oust Walton. She made outrageous public comments in which she noted that "for years, I voiced my disgust in the Warden."

16. Cerilli publicly criticized Walton's suspension of Commissioner Cerilli's family friend, political supporter, and donor, Henry "Sonny" Caruso. With the support of Hui Xu Caruso, who has since pleaded guilty to numerous charges related to human trafficking, Commissioner Cerilli publicly blamed Walton for Caruso's suicide.

17. However, an investigation that led to Caruso's suspension shortly before his suicide revealed that Caruso was likely to be indicted by a grand jury related to money laundering, illegal activity, and illegal gains from the massage parlors that his wife was operating that were a front for illegal prostitution and human trafficking.

18. In April of 2019, Walton demanded a public apology from Cerilli and filed complaints of harassment and retaliation with the Westmoreland County Prison Board.

19. In May of 2019, Westmoreland County hired a law firm to investigate Walton's harassment complaint against Commissioner Cerilli.

20. In July of 2019, Walton received a hand-written letter from Caruso's widow in which she detailed a deal between Caruso, Cerilli, and others to protect Caruso's family if Walton was removed as the Warden.

21. In September of 2019, James Burgess filed a lawsuit against Commissioner Cerilli and others, alleging that, among other things, Cerilli made false accusations against Burgess, that were materially false and motivated by perceived support for, and affiliation with, a political rival of Cerilli, leading to Burgess's wrongful termination.

22. On September 27, 2019, Walton filed a charge of sex and age discrimination with the EEOC against the County and Commissioner Cerilli.

23. After Walton filed his EEOC complaint, the harassment continued, as did Cerilli's relentless efforts to have Walton fired.

24. Walton endured public insults, false and defamatory accusations, and unfounded criticism of his job performance as the Warden by Commissioner Cerilli.

25. Cerilli repeatedly tried to have Walton fired, falsely stating that he ran the prison like a "circus."

26. Walton complained to the County Prison Board several times about Cerilli's discrimination, harassment, and retaliation, but the harassment never stopped. Walton also complained to the Prison Board that Cerilli's actions toward him could only be seen as an effort to constructively discharge him by making conditions so unbearable for Walton that he would be forced to resign.

27. In July of 2020, Walton was one of only two prison employees who did not receive a pay increase due to Commissioner Cerilli's personal animus toward Walton.

28. Commissioner Cerilli's personal animus, harassment, discrimination, and retaliation created an unbearable and pervasive hostile work environment.

## COUNT I- 42 U.S.C. § 1983 POLITICAL AFFILIATION

29. Plaintiff incorporates paragraphs 1 through 28 of his Complaint as though fully set forth herein.

30. Defendants constructively discharged Walton because of his political affiliation in violation of Plaintiff's right to belief and association under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

31. At all times relevant hereto, Defendant Cerilli acted under color of state law, inasmuch as her actions as set forth above, constitute misuse of power possessed solely by virtue of state law and made possible only because

Commissioner Cerilli is clothed with the authority of state law and one of the highest-ranking officials in Westmoreland County Government.

32. Defendants' action toward Walton were intentional and were undertaken with reckless disregard of his federally protected right to not have his employment conditioned on political favors and patronage, and/or a pledge of political allegiance to a party, candidate or elected official he may not prefer to support.

33. The conduct of Defendant Cerilli was a conscious choice to disregard Plaintiff's Constitutional rights and deprive Walton under color of state law, of rights of belief and association under the First and Fourteenth Amendments of the U.S. Constitution in violation of 42 U.S.C. § 1983.

34. Because Cerilli is one of the highest racking County Officials, Cerilli's actions amount to policy and practice of the County.

35. As a direct and proximate result of Defendants' intentional and reckless actions, Walton has sustained both economic and non-economic damages, in the form of humiliation, embarrassment, mental anguish, inconvenience, emotional distress, anxiety, depression, and fear for his safety and the safety of his family.

WHEREFORE, Plaintiff seeks a judgment in his favor against Defendants including, compensatory damages, punitive damages, attorney fees and costs, and any other monetary and equitable relief that is just under the circumstances.

### COUNT II - SEX DISCRIMINATION/HARASSMENT/RETALIATION
### PLAINTIFF V. WESTMORELAND COUNTY

36. Plaintiff incorporates by reference the averments of Paragraphs 1-35 of the Complaint as if the same were set forth in full.

37. Walton was harassed, discriminated against, and retaliated against because of his sex.

38. The above-described unlawful employment practices by Defendant violate Title VII.

39. The Defendant's actions were performed with malice and/or reckless indifference to the Plaintiff's federally protected rights.

40. As a direct and proximate result of the above-mentioned employment practices, Walton was constructively discharged and deprived of his job and has lost income in the form of back and front pay, fringe benefits, retirement contributions, medical insurance, lost future job opportunities, future substantial pecuniary losses, non-pecuniary losses and he has suffered the non-economic damages described above.

WHEREFORE, Plaintiff demands judgment against Defendant and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, punitive damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

## COUNT III – ADEA
## PLAINTIFF V. WESTMORELAND COUNTY

41. Plaintiff incorporates by reference the averments of Paragraphs 1-40 of the Complaint as if the same were set forth in full.

42. Defendant harassed, discriminated against, and retaliated against Walton because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. 42 U.S.C. § 623(a)(1).

43. But for Walton's age, Defendants would not have harassed, discriminated against, or retaliated against him.

44. Defendant's violation of the ADEA was willful.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, plus costs of this action, liquidated damages, attorneys' fees, and such other relief as the Court may deem just and proper under

the circumstances.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFF v. CERILLI

45. Plaintiff incorporates by reference the averments of Paragraphs 1-44 of the Complaint as if the same were set forth in full.

46. Cerilli's conduct described herein was intentional and based on her personal animus against Walton.

47. Cerilli's extreme and outrageous conduct described herein intentionally and recklessly caused Plaintiff to experience severe emotional distress and the non-economic damages described herein.

WHEREFORE, Plaintiff demands judgment against Defendant Cerilli, in the form of compensatory and punitive damages.

**JURY TRIAL DEMANDED**

                                          Respectfully submitted,

                                          THOMSON, RHODES & COWIE, P.C.

Dated July 5, 2021                /s *Thomas B. Anderson, Esquire*
                                          Thomas B. Anderson, Esquire
                                          PA I.D. #79990
                                          THOMSON, RHODES & COWIE, P.C.
                                          Firm No. 720
                                          Two Rodi Plaza, Suite 301
                                          Pittsburgh, PA  15235
                                          (412) 232-3400
                                          tanderson@trc-law.com

                                          Attorneys for the Plaintiff