**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

B.P. a minor, by and through their parent, L.P.;
C.L. a minor, by and through their parent, K.L.;
O.D. a minor, by and through their parent;
N.D., R.J. a minor, by and through their parent,
H.J.; L.H. a minor, by and through their parent,
S.H.; O.P. a minor, by and through their parent,
S.P.; E.H. a minor, by and through their parent,
M.H.; L.S. a minor, by and through their
parent, B.P.; G.E. a minor, by and through their
parent, A.E.; M.B. a minor, by and through
their parent, R.B.; and G.A. a minor, by and
through their parent, A.A., each a minor
resident of the North Allegheny School District
attending a North Allegheny School District
School or a parent of the same,

Plaintiffs,

v.

NORTH ALLEGHENY SCHOOL
DISTRICT, a Pennsylvania governmental
entity, ANDREW CHOMOS, MARCIE
CROW, ELIZABETH BLACKBURN,
RICHARD MCCLURE, SCOTT E.
RUSSELL, ALLYSON MINTON, KEVIN
MAHLER, ELIZABETH WERNER,
and SHANNON YEAKEL, all individual
elected officials sued in their individual
capacity and in their capacity as members of
the NORTH ALLEGHENY SCHOLL
DISTRICT BOARD OF DIRECTORS, a
Pennsylvania elected legislative body,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

I.   **Overview – The Board Policy Manual Requirements Charge the Superintendent with oversight and control of health guidelines and universal precautions to be implemented for the School District. On August 13, 2021, after consulting with medical professionals the Superintendent implemented a universal masking policy for the School District. The School Board, without providing the required**

**notice to the public and required two meetings prior to making a School District Policy Change violated Due Process by revoking the School District Policy of Universal Masking at a working Board Meeting on August 18, 2021.**

The North Allegheny School Board Policy Manual, Section 200 – Pupils, Immunizations and Communicable Diseases, Code 203, Adopted November 18, 2015, Section 203 - IMMUNIZATIONS AND COMMUNICABLE DISEASES sets forth, in pertinent part:

> I. Purpose
> It is the School District's responsibility to safeguard the welfare of all students and staff and affirms that the classroom/workplace environment should be such that it promotes the physical well-being of students, employees, and the public.
>                 *   *   *   *   *
> IV. Guidelines
> B. Communicable Diseases
> iv. The Superintendent or designee shall direct that health guidelines and universal precautions designed to minimize the transmission of communicable diseases be implemented in the North Allegheny School District's programs.
>                 *   *   *   *   *
> E. Education
> i. Instructions regarding communicable and life-threatening diseases shall be provided by the schools in the educational program for all levels.
> Title 22, Sec. 4.29

As will be shown herein, the Superintendent, after consulting with the School and County medical authorities and reviewing CDC guidelines, and the transmission rate in Allegheny County has entered the "high" infection rate category, determined that universal masking was necessary for the School District. An email was sent to the entire School District on August 13, 2021 announcing the School District's policy directing that Universal Masking in all school buildings was required starting August 16, 2021.

The School Board, without required notice to the public and a first and second reading of any School District policy change, at a working meeting of the Board on August 18th approved motion by a 6 to 3 vote to change the School District's policy established by the Superintendent pursuant to 200 – Pupils, Immunizations and Communicable Diseases, Code 203, IV.

2

As further shown herein, this change of School policy violates the Due Process clause of the 5th and 14th Amendments to the United States Constitution, since notice and a hearing were not provided pursuant to the established and mandatory School Board procedures.

Further, it has been determined on good authority that the School Board in contravention to 200 – Pupils, Immunizations and Communicable Diseases, Code 203, IV. Guidelines, E. Education (i), has directed the teachers to NOT talk about masks to the students.

As additionally shown herein, the Board has violated Due Process, violated the requirements of its own Policy Manual, and exceeded the scope of its authority.

Accordingly, all that Plaintiffs are asking the Court to do is to return the Status Quo of requiring universal masking as was directed by the North Allegheny School Superintendent on August 13, 2021.

## FACTUAL BACKGROUND

### A.  North Allegheny School District and the Board of Directors

North Allegheny School District ("NASD") is the second largest School District in Allegheny County.  Its School Board is comprised of these nine individuals: Andrew Chomos, Marcie Crow, Elizabeth Blackburn, Kevin Mahler, Richard McClure, Allyson Minton, Scott E. Russell, Elizabeth M.J. Warner, and Shannon Yeakel.  Andrew Chomos, the President of the School Board, has a Bachelors Degree in Business and Accounting.  Marcie Crow, the Board's Vice President, has a Bachelor of Science in Elementary Education and a Masters of Education K-12. She has principal certifications in both elementary and secondary education. She also holds teaching certifications in English and Multi-Genre Writing from Oxford University.  Elizabeth Blackburn has a degree from Kenyon College. Upon information and belief, Ms. Blackburn's degree is not in medicine.  Kevin Mahler has an undergraduate degree in Sociology and

Anthropology from Duke University and an MBA from the University of Pittsburgh.  Richard McClure has an undergraduate degree from Geneva College. Upon information and belief, Mr. McClure's degree is not in medicine.  **Allyson Minton has** BA in History and Secondary Education from Washington College.  **Scott E. Russell** has a degree in Computer Science from Indiana University of Pennsylvania and is currently enrolled in a Masters in Cybersecurity program at St. Bonaventure University.  **Elizabeth M. J. Warner** has degrees in Civil Engineering and Engineering and Public Policy from Carnegie Mellon University and a Masters Degree in Environmental Engineering from Johns Hopkins University.

This nine-member Board unanimously appointed Melissa R. Friez, Ed.D., to serve as Superintendent of Schools, effective July 1, 2021.   As Superintendent, Dr. Friez is charged with the administration of NASD.  Conversely, **the North Allegheny School District website states that the Board** "sets the exemplary standards that best serve the interests of the children and the residents of the District."  https://www.northallegheny.org/Page/1039.

According to the Board Policy Manual, the Board considers one of its most important functions to be Legislative or Policy Making. *See* Board Policy, Section 000, Code 002, Sec. 2(D)(i), attached hereto as **Exhibit A**.  This same Board Policy states "Board procedures and policies shall be consistent of law, have a rational and substantial relationship to a legitimate purpose of the Board, and be directed toward the maintenance and support of a thorough and efficient system of public education in this District." *Id.*  This Policy section also states "[t]he Board is responsible for acquiring the reliable information from responsible sources which will enable it to make the best possible decisions about the scope and nature of the educational program." *Id.* at sec. II(D)(ii).

**B.  NASD's Back to School Planning**

In February 2021, the District formed a Back-to-School Planning Committee (the "Planning Committee") for the 2021-2022 School Year. The Planning Committee is comprised of: the North Allegheny Executive Council, School Administration, North Allegheny Federation of Teachers, the Education Advisory Council ("EAC"), the Secondary Advisory Council ("SAC"), Superintendents' Parents' Liaison Committee ("SPLC"), the Student Services Advisory ("SSA"), and members of the Health Services and Medical Community.

The Planning Committee met bi- in March, April, May, and June of 2021.  In May, the District surveyed parents/guardians to gauge their interest between In-Person Instruction and NA Cyber Academy for the 2021-2022 school year. Ninety-four percent of parents/guardians responded to the survey, and 94.4% of those who responded (or 7,543 of 7,993), said they plan to select In-Person Instruction.  Following these planning meetings and taking into account the results of the parent survey, the Planning Committee used a collaborative approach to develop the Health and Safety and Education Plans for the 2021-2022 School Year.

**C.  Communication of the District's Health and Safety and Education Plans to District Families**

One June 17, 2021, Dr. Friez sent a district-wide email to parents concerning the Health and Safety and Education Plans for the 2021-2022 School Year and linked the plans to the email. Dr. Friez informed District parents that "These plans were created with the information that we know now. The District will continue to follow local, Commonwealth, and national guidance, which may require our plans to change." Email from M. Friez to North Allegheny School District Parents/Guardians, June 17, 2021, attached hereto as **Exhibit B**.

The Plan stated that "The District will continue to *follow* local, Commonwealth, and federal guidance, which may require our plans to change." *See* Back to School Plan, Draft Published June 16, 2021 (the "Plan"), attached hereto as **Exhibit C**, p. 2; *see also* p. 12 ("The North Allegheny School District 2021-2022 Health and Safety Plan was developed based on local, Commonwealth, and federal guidance as of June 16, 2021").  The District's mask policy at this time was as follows:

- Students and staff are required to wear face coverings in accordance with the order of the Pennsylvania Department of Health requirements.
- As of June 28, 2021 or when 70 percent of adults get their second dose, whichever comes first, the Commonwealth's mask order can be lifted. At this time, the District will not require face coverings after June 28, unless directed to do so by local, Commonwealth, and/or federal guidelines.
- Students and staff may choose to wear a face covering, even if we are not required by local, Commonwealth, and/or federal guidelines.

*Id.* at p. 13.

The final paragraph of the June 16 Plan stated it was subject to change. Specifically, the Plan stated: "This document was drafted on June 16, 2021 and is subject to updates. If and when the circumstances surrounding the COVID-19 pandemic change, the federal, Commonwealth, and local guidance may also change." *Id.* at p. 17.  On June 23, 2021, the Board voted to approve the June 16, 2021 Health and Education Plans.

### D.  COVID-19 Cases Begin Spiking in Allegheny County; National, Commonwealth, and County Health Agencies Recommend Universal Masking in K-12 Schools

For the week beginning June 13, 2021, the Allegheny County Health Department reported 66 confirmed and 74 probable COVID-19 cases.[1]  By mid-July, Allegheny County was beginning to experience a surge in cases, which health experts were attributing to the highly

---

[1] *See* Allegheny County Health Department Covid-19 Summary, https://tableau.alleghenycounty.us/t/PublicSite/views/COVID-19Summary_16222279737570/COVID-19Summary?:showAppBanner=false&:display_count=n&:showVizHome=n&:origin=viz_share_link&:isGuestRedirectFromVizportal=y&:embed=y, last accessed August 21, 2021.

contagious Delta variant.   For the week beginning July 11, 2021, Allegheny County Health Department reported 176 confirmed and 72 probable cases.[2]

On July 19, North Allegheny School District Parents/Guardians were instructed to make their enrollment selections for the 2021-2022 School Year, selecting between in-person instruction and the North Allegheny Cyber Academy. *See* District Email to North Allegheny School District Parents/Guardians, July 19, 2021, attached hereto as **Exhibit D**. The deadline for enrollment was July 25 and anybody who did not make a selection by that date would automatically be enrolled for in-person instruction. *Id.* Parents could not change their enrollment selection until January 2022.

Various District parents and guardians contacted the District prior to making their enrollment selections to inquire about the District's mask policy in light of the rising number of COVID-19 cases in the county. The District responded by stating that it was continuing to monitor the situation and might require face coverings:

> The District will continue to monitor the spread of COVID-19 within our school community and is prepared to quickly make decisions to increase prevention strategies.  The District may decide to require face covering for reasons such as (but not limited to): community spread of the illness in classrooms, individual school buildings, and across the district, or a change in the community transmission level in the county. This also includes regular consultation with the Allegheny County Health Department and our District physician.   In addition to these measures, the District will comply if it is mandatory to implement face coverings by local, Commonwealth, and/or Federal officials.

> As we approach the 2021 -2022 school year, our administration and staff will continue to ensure that our schools remain safe, caring, and respectful learning environments.  As a District we are committed to implementing prevention strategies to keep our students and staff healthy and safe.

Email from M. Friez, July 21,2021, attached as an **Exhibit E**.

---

[2] *Id.*

Plaintiffs made their enrollment selections based on the District's stated commitment to monitoring the Covid-19 pandemic and adjusting the Back to School Plan to require masks based on the referenced data points and consultation with the ACHD and District Physician. Plaintiffs relied on the District's past practices, including requiring masks in the previous year and stated commitment to monitoring health data.

On July 27, the Centers for Disease Control "recommend[ed] universal indoor masking for all teachers, staff, students, and visitors to schools, regardless of vaccination status." https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.       On August 4, 2021, the CDC stated, "Due to the circulating and highly contagious Delta variant, CDC recommends universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status. https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.     The Pennsylvania Department of Education and the Allegheny County Health Department aligns themselves with the CDC's universal mask recommendations. *See* https://www.education.pa.gov/Schools/safeschools/emergencyplanning/COVID-19/SchoolReopeningGuidance/ReopeningPreKto12/CDCGuidanceInf, and https://www.alleghenycounty.us/Health-Department/Resources/COVID-19/Frequently-Asked-Questions.aspx.   On August 2, 2021, Allegheny County moved to the substantial transmission level of the COVID-19 virus. *See* Exhibit, Allegheny County Transmission Level Data from CDC, obtained from https://covid.cdc.gov/covid-data-tracker/#county-view.

**E.  The District Updates Its Health and Safety Plan, Requiring Universal Masking**

On August 10, 2021, Dr. Friez sent a welcome email to parents in the District. In it she reiterated the statement made in prior correspondence with various District parents, stating, "As

was shared in the Back to School Plan, the District will continue to monitor the spread of COVID-19 within the school community and is prepared to quickly make decisions to increase prevention strategies. The District may decide to require face coverings for reasons such as (but not limited to): community spread of the illness in classrooms, individual school buildings, and across the District, or a change in the community transmission level in the county. This also includes regular consultation with the Allegheny County Health Department and the District physician." Email from Dr. Friez to Parents/Guardians, August 10, 2021, attached hereto as **Exhibit F**.

On August 13, 2021, as Covid-19 cases continued to rise, Dr. Friez informed the District that an update to the Health and Safety Plan was needed:

> In order to honor the commitment to five days of in-person instruction and the need for our students to return to school to a safe environment with as few interruptions as possible, NASD will require face coverings indoors for students, staff, and visitors for grades K-12 beginning Monday, August 16.
>
> This decision to consider universal masking is a result of several factors:
>
> Analyzing COVID-19 data from last school year, as well as county and community statistics over the past month.
>
> Consultation with the Allegheny County Health Department and District Physician.
>
> Changes in the quarantine procedures that would negatively impact our ability to ensure consistent in-person instruction for all students.
>
> Next week, an update to the District's Back to School plan will be shared during the NASD Board of School Directors meeting. The draft presentation for Wednesday night, which includes the rationale for this change and other updates to the Health & Safety Plan, can be found here.

Email from Dr Friez to District Parents, August 13, 2021, attached hereto as **Exhibit G**.  The presentation informed that, under last year's CDC guidance, NASD was required to quarantine all students within six feet or more, regardless of their use of a face covering. Under the updated CDC

guidance, if both the infected and the exposed students correctly and consistently work well-fitting masks, the exposed, but correctly masked, students do not need to quarantine. *See* 2021-2022 Health and Safety Plan Update, August 18, 2021, at p. 6, attached hereto as **Exhibit H**.

The District analyzed the quarantining data from the 2020-2021 school year, noting that 9,923 quarantine notes were issued during that year. *Id.* at p. 8. Robust details on number of students and staff quarantined was provided, showing that 2,228 students were quarantined once, while 2,335 students were quarantined more than once. *Id.* One student was quarantined nine times. *Id.* Data from the Allegheny County Health Department established that case of school age children 5-18 had increased steadily over the past four weeks, from 28 in the week of July 10-16, to168 during the week of August 7-13. *Id.* at p. 15. Similarly, cases in the North Allegheny School District municipalities were increasing. *Id.* at p. 16.

The District's Health Services had been having weekly meetings with the District Physician since July to review county and local data and guidelines. *Id.* at p. 17. "Based on these discussions, to avoid large numbers of quarantines and to maximize in-person learning while providing a safe learning environment for students and staff, the group agreed that requiring masks was necessary." *Id.*

On August 14, 2021, Allegheny County's Covid-19 community transmission level was moved from substantial to high. *See* Allegheny County Transmission Level Data from CDC, obtained from https://covid.cdc.gov/covid-data-tracker/#county-view last accessed August 22 2021.

### F.  At the NASD August 18, 2021 Board Meeting, Without Prior Notice, the Board Votes to Eliminate Universal Masking and Make Masks Optional

As is customary, the NASD Board Meeting Agenda was posted on the School Board's

website the day prior to the meeting, August 17, 2021. The Agenda included a line item under

Section C., Reports, for Dr. Friez's presentation of the Back to School Plan Update. *See* Agenda

for NASD Board Meeting, attached as an **Exhibit I**. There was no indication under Section D.,

Special Meeting Voting Items, that the Board would vote on the Back to School Plan Update. *Id.*

As the August 18th Meeting approached, community members learned that the District had

eliminated two safety accommodations that had been implemented during the pandemic: 1) they

moved the meeting from the spacious North Allegheny Senior High School auditorium to the much

smaller Board Room at the Central Administration Office; and 2) they prohibited speakers from

calling in with their remarks. All comments had to be made in person.  Although the mask

requirement for staff and visitors had gone into effect on August 16th, Board Vice President Marcie

Crow and Director Elizabeth Blackburn violated the District's policy by attending the August 18

meeting unmasked.  During the meeting, Director Andrew Chomos expressed his dislike for masks

and removed his mask.

During the meeting, Dr. Friez presented the 2021-2022 Health and Safety Plan Update to

the Board and community attendees.  In addition to sharing the bases for updating the Plan to

require universal masking, she shared the following: only 20% of District children aged 12 and

older are vaccinated.  That is, all District children under 12, and 80% of children 12 and over, in

the District are unvaccinated.

Although the community had been informed via Dr. Friez's August 13 email that the Health

and Safety Plan Update regarding masks had gone into effect on August 16, Member Elizabeth

Blackwell made a motion during the August 18 meeting for the Board to vote on whether to

eliminate the universal masking requirement that had gone into effect upon the authority of

Superintendent Dr. Friez two days prior.  Member Marcie Crow seconded the Motion.

Member Allyson Minton voiced her surprise at the addition of this voting item to the agenda, noting that the custom and practice of the Board is to set the agenda, then circulate information needed for voting items to all Board members prior to the meeting so that the Members can make informed decision on the voting item.  Member Blackburn admitted that she had mentioned to Ms. Crow and Mr. Chomos prior to the meeting that she was considering making a motion to vote on the Update to the Health and Safety Plan.

Because the Back to School Plan Update was not listed as a voting item on the Board's Agenda, neither the full Board, nor community members, had notice that the Board would vote on overturning the District's two-day-old mask policy.  Community attendees informed friends who were not in attendance that if they wanted to speak on this issue, they had to get to the Board Meeting as quickly as possible.  Though some individuals did rush to the meeting, upon information and belief, various constituents who would have spoken had they had been provided notice of the vote were not afforded their right to be heard.  Upon information and belief, the vast majority of speakers spoke in favor of Dr. Friez's recent update to the mask policy in light of the surge in Delta variant Covid-19 cases and the desire to take reasonable steps to ensure student and staff safety, and to provide the best chance for consistent in-person learning.

The District's well-reasoned decision to require universal masking in its K-12 buildings was supported by recommendations by every local, state, and national health agency, analysis of the District's past quarantining numbers, consideration of the rise in COVID-19 cases in the county and District Municipalities and following consultation with the District's Physician.

Despite all of the information supporting the conclusion that universal masking will reduce the necessity of quarantining and lost in-person education time, providing NASD with the best possible chance of maximizing in-person education while protecting its staff and students, at the

conclusion of public comment, Members Blackburn, Crow, McClure, Chomos, Yeakel, and Russell voted to eliminate the universal masking requirement, and thus, with a 6-3 vote against masks, masks were made optional for all students, staff, and visitors. The District did not consider whether, or how significantly, parties had relied on its previous policies, decisions, and commitments.

### G. The Board Members Offered No Basis for Eliminating the Universal Masking Requirement that Went Into Effect on August 16, 2021.

The six Board members who voted to eliminate the universal masking requirement did not state that they spoke with any health professionals inside or outside of the District prior to concluding that universal masking should be eliminated.  They provided no information from any local, Commonwealth, or national health agency to support the elimination of universal masking. They did not state that the District Physician supported their vote, and in fact, the District Physician recommends universal masking.  They did not provide any evidence that masking would undermine or prevent the District from achieving its goal of maximizing in-person instruction while protecting staff and students, or that optional masking was a more effective way to achieve this goal. They did not present any evidence that masking would harm any student or staff member.

At 2:15 am, correspondence from the District was sent to North Allegheny Parents and Guardians via email, stating as follows:

> The Board of Directors, voted 6-3 to make masks optional, but strongly recommended, for students, staff, and visitors through September 22, 2021. This vote will be reviewed again at the September 22, 2021 Board of Directors meeting.

*See* August 19, 2021 email, attached hereto as **Exhibit J**.

### H. The District's Rescission of the Masking Requirement Causes Immense and Irreparable Harm to Students, Staff, and Community, Who Are at Increased Risk of Developing COVID-19 and to Students Who Are At Risk of Losing Critical In-Person Instruction Time

NASD's first day of school is August 23, 2022. By September 22, 2021, the date of the next announced Board meeting to reconsider masking, students and staff will have spent twenty-two days unmasked in close proximity to one another.  The Delta variant of COVID-19 can be transmitted easily even by vaccinated individuals. *See* Affidavit of Anna Marie White, MD, attached hereto as an **Exhibit K**, at ¶5.  Many other physicians concur in this opinion.  *See* Eleven Further Affidavits of Physicians, attached hereto as **Exhibits L-V**.  Thus, 100% of NASD students, staff, and visitors are capable of transmitting Covid-19 to one another or to somebody else in the community. "COVID can be transmitted into mucous membranes, including the eyes, so children wearing masks in rooms with unmasked individuals (despite vaccination status) are at risk for infection.  **Exhibit K**.  Put simply: "Masks work." *Id.*

Dr. White informs us that "[m]edical studies demonstrate that if my child is wearing a mask, he is protecting those around him in case he has COVID, but is only minimally protected if someone around him is unmasked and has COVID." *Id.* ¶7.  Under the current policy of optional masking effectuated by the Board's August 18 vote, "the Delta variant of COVID will spread throughout the school district and into the community at large." *Id.*, at ¶8.  Dr. White opines that all vaccinated and unvaccinated children in the school district "need to be masked in order to avoid not only the spread of the virus/illness but also to prevent quarantines to the children who are exposed to a student who contracts COVID." *Id.* at ¶12.    There are no health risks to wearing masks, and there is no evidence that masks affect a child's ability to focus or learn in school. *See, e.g.*, **Exhibit K,** ¶12.  In Dr. White's medical opinion, "immediate and irreparable injury, loss, or damages will result" if universal masking is not required for all NASD students and employees. *Id.* at ¶13. Without universal masking, children, teachers, and/or staff could suffer serious illness

14

or death. *Id.*

## LEGAL ARGUMENT

**I.     Due Process Violations Committed by the School Board**

**A.  First Violation**

In *Goss v. Lopez 8212 898*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that the Fourteenth Amendment of the Constitution "forbids the State to deprive any person of life, liberty, or property without due process of law." *Id*. at 572. The Court explained that protected interests in citizen's property "are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits. *Id*. at 572-573. (Citation omitted).

Here, on the basis of Pennsylvania State law, the Plaintiffs have legitimate claims of entitlement to a public education based on state law, and these rights are protected from the state by the Fourteenth Amendment. *Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141 (3d Cir. 2005) (Under Pennsylvania law, a student has a "legitimate claim of entitlement to a public education.") *Id*. at 149 n.3 (citing 22 Pa. Code § 12.8(a)). Public education in Pennsylvania is a fundamental right required by Article III, Section 14 of the Pennsylvania Constitution. *See Sch. Dist. of Wilkinsburg v. Wilkinsburg Educ. Ass'n*, 667 A.2d 5, 9 (Pa. 1995). Further, attendance at school is compulsory. *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 149 (3rd Cir. 2005) ("Compulsory attendance laws automatically inhibit the liberty interest afforded public school students, as the law compels students to attend school in the first place.") (citations omitted).

In *Phillips v. County of Allegheny*, 515 F.3d 224 (3rd Cir. 2008), the Third Circuit Court determined when a plaintiff is bringing a claim under Section 1983, "a plaintiff must plead a

deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Id*. at 235 (citation omitted).

Here Plaintiffs allege a deprivation of their children's Fourteenth Amendment rights to education in a safe and healthy environment, as provided by the Pennsylvania Constitution, by the School Board's failure to provide due process, the failure to provide a safe and healthy environment and further the School Board has endangered the lives of the children of the school district and taken affirmative action which increases the risk of illness, harassment, intimidation, bullying, divisiveness, injury and possible death because of overturning the status quo established by the order of the Superintendent of the North Allegheny School that the children are required to wear masks because of the heightened risk of infection from the Delta Variant of Covid-19 in Allegheny County in general and North Allegheny in particular. See August 13, 2021 email to the entire School District from the Superintendent.

It is recognized that the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens. *See DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195-96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, "the state-created danger theory operates as an exception to that general rule." *Phillips supra* at 235.

In *Phillips*, the Court set forth a four-part test, which plaintiffs must meet:

(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct;
(2) the state-actor acted in willful disregard for the plaintiff's safety;
(3) there was some relationship between the state and the plaintiff; and
(4) the state-actor used his authority to create an opportunity for danger that
 otherwise would not have existed.

*Id*. citing *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir.2006) (quotations and footnotes omitted).

**(1)    the harm is foreseeable and direct.**

16

Public health experts and physicians advise that lack of universal masking causes an increase in the spread of Covid. Without masking, harm to students and teachers is entirely foreseeable and the direct result of the failure to implement universal masking.

There is a national Pandemic caused by Covid-19. In August of 2021, Allegheny County went from "moderate" level of infection to a "high" level of infection."

> Allegheny County started in substantial level of community transmission on August 2, 2021 and as of August 14, 2021, is now in a high level of community transmission.  The last time we were in substantial transmission was April 23, 2021. High transmission is considered 100 or more cases per 100,000, or a positivity rate between 10% or higher.
> **Due to the circulating and highly contagious Delta variant, CDC recommends universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status.**
> 64% of cases in our region are the Delta variant.
> The Allegheny County Health Department encourages Districts to follow this recommendation.
> (Allegheny County Health Department Website)

See **Exhibit H** (emphasis added).

The Superintendent, who is charged with the well-being and safety of the student body, sought consultation with medical professionals, concerning what steps should be taken in order to keep the students safe when they return to full-time in-person classroom study in the School District. In order, to make a reasoned and educated decision, the Superintendent obtained the input of the School District Physician, and the Allegheny County Health Department and reviewed the information and recommendations of the CDC. As a result of a reasoned analysis of this information and advice, in order to protect the students, faculty and administration, the decision was made to implement universal masking for the entire School District.

This decision to consider universal masking is a result of several factors:
Analyzing COVID-19 data from last school year and county and community

statistics over the past month.

Consultation with the Allegheny County Health Department and District Physician.

Changes in the quarantine procedures that would negatively impact our ability to ensure consistent in-person instruction for all students.

*Id.*

Multiple Pediatricians have provided affidavits in support of the request for a Temporary Restraining Order emphasizing the dire and immediate serious medical consequences of infection and possibly death that would be caused if the children are not masked. **Exhibits L-V**. Indeed, without universal masking in schools, there are likely to be far-reaching consequences including there will not be enough intensive care unit beds and staff available to handle even a moderate influx of children requiring serious medical care caused by infection from Cofid-19, the Delta Variant. Indeed, all of the children under the age of 12 are not yet permitted to be vaccinated. Also, school statistics show that approximately only 25% of the student body is presently vaccinated.

Currently, the sports teams and the marching band have preseason camps where the majority of time is spent outdoors. Even so, the School District reports there are presently 16 positive cases of infection (3 staff and 13 students) as of August 20th at 4:30 p.m. and school has not yet even officially opened.  See northallegheny.org\page\33033, from the North Allegheny School District Website containing the 2021-2022, Covid-19 Tracker at NASD.

Accordingly, element one - "the harm ultimately caused to the plaintiff was foreseeable and fairly direct" - has been met.

(2)     **the state-actor acted in willful disregard for the plaintiffs' safety**.

On August 18, 2021, the School Board held a working meeting at which the Board met

to review the applications of two new employees and possibly hire the same. After completing this action, the Board had the Superintendent present an Update of the Back to School Planning and Health and Safety Plan.

After the Superintendent completed the presentation on the Update of the Back to School Planning and Health and Safety Plan, Board Member Elizabeth Blackburn made a motion to overrule the Superintendent's decision implementing universal masking which had an effective date of August 16th, which was two days prior to the August 18th School Board Meeting. There was some confusion as to whether Ms. Blackburn informed the President and Vice President of the School Board about making a motion prior to the meeting. The motion was not on the Agenda.

Board Member Allyson Minton, expressed confusion that this item was coming to vote since she received no prior notice of any action to be taken by the Board on the Superintendent's Update of the Back to School Planning and Health and Safety Plan. Typically, the School Board members are provided notice before the meeting with a packet of information on voting items.

Also, there was no advance notice to either the Board or the Public in the Agenda for the meeting that there would be any voting items regarding the Superintendent's Update of the Back to School Planning and Health and Safety Plan which had already been implemented and communicated to the entire School District.

After the motion was made, public comment was invited.  Since there was no notice to the public that there would be a motion made to overturn the Superintendent's implementation of universal masking, the public had little to no opportunity to provide input and information regarding this critical issue related to protection of the health and well-being of the children of the school district from infection related to Covid-19 and the highly contagious Delta Variant.

After the limited public comment, due to the lack of advance notice of a vote, there was a

brief discussion between the Board Members and then a vote was held. The votes were 6 in favor of removing the universal masking requirement (Members Chomos, Crow, Yeakel, Russell, McClure, and Blackburn), and three against (Members Minton, Mahler, and Warner).

The School Board has a Policy Manual. In Section 800 - Operations Emergency Preparedness Adopted August 24, 2016. 805 - EMERGENCY PREPAREDNESS sets forth the requirements of the Board to protect the "safeguard the health and welfare of District students". It reads as follows:

> Purpose
> The Board recognizes its responsibility to safeguard the health and welfare of District students and employees. Therefore, **the Board shall provide the facilities**, **equipment, and training necessary to minimize the effects of** all hazards and emergencies, including but not limited to natural disasters, hazardous chemicals, fires, weapons, bomb threats, terrorism, **communicable diseases, and pandemics.** Advance planning and comprehensive implementation are key components in ensuring the protection of the school community.

 See https://go.boarddocs.com/pa/nasd/Board.nsf/Public# (emphasis added).

Authority is delegated to the Superintendent to develop and implement a plan of action.

> Delegation of Responsibility
>  **The Superintendent** or designee shall collaborate with relevant stakeholders, including parent(s)/guardian(s), staff, community agencies, and first responders during the development and implementation of the emergency preparedness plan.

*Id.* (emphasis added).

In Policy Manual Section 800 - Operations, Health and Safety Committee Code832 Adopted July 19, 2017, 832 - HEALTH AND SAFETY COMMITTEE, sets forth that:

> Purpose
> It is the goal of the North Allegheny School District **to provide a workplace free from unreasonable risk of injury and disease.**

*Id.* (emphasis added).

20

In Policy Manual Section 000 - Board Procedures, Board Governance Standards/Code of Conduct Code 011 Adopted December 16, 2015, 011 - STANDARDS FOR EFFECTIVE SCHOOL GOVERNANCE/CODE OF CONDUCT (As adopted from the Pennsylvania School Boards Association), it is set forth:

II.     Code of Conduct for School Board Members
  (as adopted from PSBA Code of Conduct)
A.     We, as members of the North Allegheny School Board, representing all the residents of our School District, believe that:
B. IX.  **We should respect that the Superintendent of Schools and his or her staff are responsible and accountable for the** delivery of the educational programs and the **conduct of school operations**.

In voting to remove the universal mask directive of the Superintendent, the School Board violated Policy Manual Section 011 - STANDARDS FOR EFFECTIVE SCHOOL GOVERNANCE/CODE OF CONDUCT II.B.IX by failing to respect that "**the Superintendent is responsible and accountable for the ... conduct of school operations.**"

In voting to remove the universal mask directive of the Superintendent, the School Board violated Policy Manual Section 805 - EMERGENCY PREPAREDNESS by failing to provide "**the facilities, equipment, and training necessary to minimize the effects of communicable diseases, and pandemics**."

In voting to remove the universal mask directive of the Superintendent, the School Board violated Policy Manual Section 832 - HEALTH AND SAFETY COMMITTEE, by failing "**to provide a workplace free from unreasonable risk of injury and disease.**"

Accordingly, in voting to undue the universal mask policy implemented by the Superintendent, the School Board violated the requirements of its own Policy Manual and "acted in willful disregard for the plaintiffs' safety."

21

**(3)      there was some relationship between the state and the plaintiffs**

As set forth above in detail, since Pennsylvania requires providing a public education and children are required to attend school, this satisfies the requirement that there was a "relationship between the state and the plaintiffs."

**(4)      the state-actor used its authority to create an opportunity for danger that otherwise would not have existed.**

"Liability ... is predicated upon the states' affirmative acts which work to the plaintiff's detriment in terms of exposure to danger. It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *See Phillips v. County of Allegheny*, 515 F.3d 224 (3rd Cir. 2008) (citations omitted).

Here the School Board took affirmative action by voting to undue the status quo of the universal mask requirement which was implemented on August 16, 2021. In doing so, the School Board "used its authority to create an opportunity for danger that otherwise would not have existed."  That is, the School Board has materially increased the risk for the spread of Covid-19 among the student body and employees of the School District. *See* Superintendents Presentation, **Exhibit H**, and the Affidavits of Pediatricians, **Exhibits L-V**, setting forth the imminent and materially increased risk of harm caused by not wearing masks in an unvaccinated student population for age under 12 and 75% unvaccinated remainder of the above age 12 student population. *See supra*.

The determination of what process is "due" is "not to be found in statutes ... [but] is a question of federal constitutional law." *McDaniels v. Flick*, 59 F.3d 446, 458 (3d Cir. 1995) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful

manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted).

By choosing not to inform the public and the School Board Members prior to the meeting, that a vote was going to be taken to undue the universal masking requirement for the School District, the public was unable to address this significant and material issue impacting their children's safety in a meaningful way. There was no opportunity for citizens to prepare and present evidence like that submitted here-the testimony of experts in relevant fields.

Accordingly, all four elements of state-created danger are met, and Plaintiffs will be able to successfully prove there was a violation of Section 1983.

## B. Procedural Due Process Violation

The School Board's Policy Manual sets forth the procedure for notifying the public about a change in policy or procedure withing the school district. See Policy Manual Section 000 - Board Procedures Functions Code 003 Adopted September 30, 2015, 003 - FUNCTIONS, which sets forth:

> Legislative
> The Board shall exercise its rule-making power by adopting Board procedures and policies for the organization and operation of the School District. Those procedures and policies which are not dictated by the statutes, or regulations of the State Board, or ordered by a court of competent authority may be adopted, amended, or repealed at a designated meeting of the Board.

*See* https://go.boarddocs.com/pa/nasd/Board.nsf/Public#

The Superintendent, Dr. Friez had the authority to make decisions concerning whether to require universal face coverings in District buildings. Pursuant to that authority, she implemented a universal face covering policy required of all staff, students, and visitors when inside NASD buildings. On August 13, 2021 a District-wide email was sent by Superintendent, Dr. Friez, setting forth this School District policy that effective August 16, 2021, NASD "require[d] face coverings

23

indoors students, staff[,] and visitors for grades K-12". see also NASD 2021-2022 Health and Safety Plan Update August 18, 2021 slide deck, p. 3 (**Exhibit H**).

When the School Board wants to change, alter, or amend a policy there is a required procedure which the Board must follow. First, the "C. New or amended procedures or policy will be developed by the Board as warranted by new legislation, revised philosophy, or relevant educational research." See https://go.boarddocs.com/pa/nasd/Board.nsf/Public#.

Second, the School Board must provide advanced notice to the public of the intent to change, alter, or amend an existing School District Policy, by (1) announcing the same "publicly at the appropriate Committee meeting; (2) making copies "of the proposed new or amended procedures or policy ... available to the public during regular business hours from the date of the appropriate Committee meeting until the new or amended procedures or policy is adopted by the Board"; (3) publicly having a "first reading of the new or amended procedures or policy will occur at the next regular Board meeting following the appropriate Committee meeting"; and (4) "at the next regular Board meeting [the Board] will vote on the second reading and adoption of the new or amended policy. *See* 003 - FUNCTIONS, subpart D.

The failure of the Board to provide this public notice and to perform a first and second reading of the proposed amended procedure to reverse the district-wide universal masking policy was a violation of procedural due process of notice and a hearing of the Fourteenth Amendment.

## C. Substantive Due Process

Substantive due process ""applies when a plaintiff challenges the validity of a legislative act." *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 139 (2000) (3rd Cir. 2000) (Alito, J.). Legislative acts are defined as "laws and broad executive regulations, [which] apply to large segments of society." *Nicholas*, at n. 1. *See also, McKinney v. Pate*, 20 F.3d 1550, 1557 n. 9 (11th

24

Cir.1994) ("Legislative acts, on the other hand, generally apply to a larger segment of-if not all of-society; laws and broad-ranging executive regulations are the most common examples.").

Here, the School Board's power to amend, alter, or change comes from its "Legislative" powers.   See Policy Manual Section 000 - Board Procedures Functions Code 003 Adopted September 30, 2015, 003 - FUNCTIONS, Legislative https://go.boarddocs.com/pa/nasd/Board.nsf/Public#.

As Judge Alito explained in *Nicholas v. Pennsylvania State Univ.*, "typically, a legislative act will withstand substantive due process challenge if the government 'identifies the legitimate state interest that the legislature could rationally conclude was served by the statute.'" *supra* at 139 (citation omitted).

Here, because the action was legislative, and not an executive act, Plaintiffs do not need to meet the "shocks the conscience test." *See County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (2006) ("But United Artists did not apply the 'shocks the conscience' standard to legislative action; rather, we clearly held in United Artists that 'executive action violates substantive due process only when it shocks the conscience.' ") citing ( *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA.*, 316 F.3d 392, 400 (3d Cir.2003)). As such, Plaintiffs do not need to establish a "protected property interest to which the Fourteenth Amendment's due process protection applies' as this standard only applies in a 'non-legislative substantive due process claim.' " Nicholas, at 139–40 citing (*Woodwind Estates v. Gretkowski*, 205 F.3d 118, 123 (3rd Cir.2000)). Here, for Plaintiff's "facial substantive due process challenge to the School Board's vote to change the School District's universal masking policy, to be successful, Plaintiffs] must 'allege facts that would support a finding of arbitrary or irrational legislative action by the' " School Board. *County Concrete Corp*. at 169, citing *Pace Resources, Inc. v. Shrewsbury Twp.*, 808

F.2d 1023, 1034 (3d Cir.1987).

At the August 18, 2021 Board Meeting, in accordance with the Agenda, Dr. Friez detailed the basis for the update to the District's Health and Safety Plan, which included: analysis of COVID-19 data from last school year and county and community statistics over the past month; 2) consultation with the ACHD and District Physician, and 3) changes in the quarantine procedures that would negatively impact our ability to ensure consistent in-person instruction for all students. *See* August 18 Slide Deck, **Exhibit H**, p. 3

Despite there being no scheduled vote on this issue identified on the Agenda, (see **Exhibit I**, Agenda, Section, Voting Items), Board Member Elizabeth Blackwell made a motion, which was seconded by Board Vice President Marcie Crow, to vote on reversing the face-covering requirement. Six members of the nine-member North Allegheny School Board voted to change the School District universal masking policy by making masks optional for all students, staff, and visitors, effective immediately and through at least September 22, 2021. See District-wide Email dated August 19, 2021, **Exhibit J**. This improper vote, which took place without notice to the community, is blatantly against the best interests of the District, as detailed in August 18 Slide Deck, **Exhibit H**.

Although the Superintendent had the authority to make decisions with respect to face coverings (CITE), and none of the six Board members presented any factual or medical evidence that contradicted the stated bases for the universal masking requirement, they voted to eliminate the mask requirement. Then, they went a step further. To prevent the Superintendent from reimplementing a mask requirement, these same Board Members also voted to strip Superintendent Friez of the ability to make future decisions concerning the implementation of masks, thereby guaranteeing these six Board Member's the ability to make unsupported decisions that affect the

health and safety of the District.

By eliminating universal masking in NASD K-12 buildings, the Board puts District students, staff, visitor, and community members at increased risk for illness and possibly death from Covid-19. Further, the Board's decision undermines the District's Back to School Planning Committee's goal of maximizing in person learning while providing a safe environment for students and staff.

Here, the actions of the School Board by failing to comply with any of its required notice procedures for changing a School District publicly announced policy, without any medical support and against the recommendations of the School Medical Director, the Allegheny County Health Department, and the CDC, leads to the inescapable conclusion that the legislative action of the School Board was "arbitrary or irrational."

Accordingly, the School Board violated both the Procedural and Substantive 14th Amendment Due Process rights of Plaintiffs.

## II. The Board's Decision to Rescind the Mask Mandate Is Arbitrary and Capricious and Must Be Vacated

As Defendants' own Policy Manual recognizes, Defendants are creations of statute and, therefore, possess only the limited authority vested in them by statute. *See* Board of School Directors of North Allegheny School District Policy Manual, sec. 002(I) (**Exhibit A**); *see generally* PA Const., Art. III, Sec. 14; Pa. School Code §§ 211, 301, 501, 502, 503, 507, 510. The board of school directors in any school district may not make any decision it wishes; rather it may adopt only *reasonable* rules and regulations that it deems necessary. 24 P.S. Education § 5-510 (emphasis added). Governing boards may not make rules that are arbitrary, capricious, discriminatory or outside their grant of authority from the General Assembly. 22 Pa. Code § 12.3.

Boards must use a rational means of accomplishing a legitimate school purpose. *Id.*

Because agencies are required to make rational, not arbitrary, decisions, courts may interfere with the discretionary exercise of a school board's power when the board's action was based upon (1) a misconception of law which caused the school board to act outside its statutory authority, (2) ignorance through lack of inquiry into the facts necessary to form an intelligent judgment, or (3) arbitrary will or caprice. *See, e.g., Parents United for Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ*., 978 F. Supp. 197, 205–06 (E.D. Pa. 1997), *aff'd,* 148 F.3d 260 (3d Cir. 1998) (citing *Roberts v. Board of Directors of the School Dist.,* 462 Pa. 464, 341 A.2d 475, 480 n. 4 (1975)); *Zebra v.  School Dist.,* 449 Pa. 432, 296 A.2d 748, 750 (1972); *Spann v. Joint Boards of School Directors,* 381 Pa. 338, 113 A.2d 281, 286 (1955)); *see also  Duffield v. School Dist.,* 162 Pa. 476, 29 A. 742, 743 (1894) (upholding vaccine mandate where mandate was not an error in judgment, or a mistake upon some abstruse question of medical science)).

Defendants' rescission of the mask mandate was based on ignorance that resulted from a total lack of inquiry into the facts and was arbitrary and capricious because it lacks any reasoning or consideration of reasonable reliance on prior policy.

### 1.   The Rescission Was Based on Ignorance Due to Lack of Inquiry Into Facts

The Board's rescission of the mask mandate should be vacated because it was based on ignorance and a complete lack of inquiry into facts. In *Parents United for Better Schools,* the Board held *nine* public hearings and conducted a thorough examination of the reasons for and against its potential policy. There, the Court concluded that the board had conducted adequate inquiry into the facts and did not base its decision on ignorance. *Parents United*, 978 F. Supp. at 206.

Unlike the board in *Parents United*, Defendants did not hold multiple hearings[3] or conduct a thorough examination of the reasons for, or against, a mask mandate. Rather, the Board held a rushed hearing that provided only 24 hours' notice to the public and provided *no* notice that a vote on a mask mandate would occur. The Board did not take formal testimony, nor did it consider any written reports in favor of, or against, a mask mandate. The sole information before the board was the public statements of the concerned citizens who were able to find out that the Board was voting on a mask mandate. Indeed, there is no indication that Defendants considered *any* scientific evidence or conducted *any* examination of the reasons for and against a mask mandate. Their decision appears to have been based entirely on anecdotal stories of citizens who somehow knew the Board would vote on the mandate.

A decision involving the lives of students, when that decision depends on epidemiology, public health, and science, demands thorough consideration of facts. Yet the Board appears to have rescinded the mandate based on its own whim without any inquiry into facts. Without any inquiry at all, it perhaps unsurprising that the rescission goes against the recommendations of every state, local, and national health agency, and the District's own physician.

**2.   The Rescission Is Arbitrary and Capricious Because It Lacks Reasoning and Fails to Consider Parties' Legitimate Reliance on Prior Policies**

Courts also intervene in Board decisions when the decisions are based on arbitrary will or caprice. *See, e.g., Parents United for Better Sch., Inc.,* 978 F.Supp. at 205-06. Recent Federal Supreme Court jurisprudence establishes that agency actions are arbitrary and capricious when they lack reasoning. *See, e.g., Dep't of Homeland Security v. Regents of the University of*

---

[3] Plaintiffs are not contending that nine hearings are necessary, as Plaintiffs understand the emergency nature of the pandemic. Plaintiffs *are* contending that the Board is required to conduct a thorough, reasoned inquiry into facts and to base its decision on information and knowledge, not caprice.

*California*, 140 S.Ct. 1891, 1912-13, 1915, 591 U.S. __(2020) (concluding that failure to offer any explanation was arbitrary); *see also Motor Vehicle Manufacturers Association of the United States, Inc.* v. *State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 51(1983) (Given National Highway Transportation Safety Administration's prior judgment that "airbags are an effective and cost-beneficial lifesaving technology," the Supreme Court held that "the mandatory passive restraint rule [could] not be abandoned without any consideration whatsoever of an airbags-only requirement."); *see also Commonwealth v. Hall*, 455 A.2d 674, 676 (Pa. Super. 1983) (State Court has jurisdiction to interfere with a school board's decision when it is apparent that the school board's conduct is arbitrary, capricious and to the prejudice of public interest.)

Here, it is not clear what Defendants' reasoning was—or whether they had any reasoning at all—because they offered no explanation for their sudden about-face. The quick about-face is even more perplexing, and more likely arbitrary, given that infection rates were climbing (and continue to climb). If Defendants have sound reasoning, the public is unable to discern what it is, and this court is unable to review it for arbitrariness. A decision that lacks any basis whatsoever is necessarily action based on arbitrary will or caprice, and it is precisely what Defendants may not do.

When an agency rescinds an existing policy, as here, it must also consider whether there was legitimate reliance on prior decisions. *See, e.g., State Farm*, 463 U.S. at 51. When an agency changes course, it must be aware that prior policies may have caused serious reliance interests. *See Regents*, 140 S.Ct. at 1913. "It would be arbitrary and capricious to ignore such [serious reliance interests." *Ibid.* In *Regents*, the agency "*was* required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents,* 140 S.Ct. at 1915.

As in *Regents* and *State Farm,* Defendants were not starting afresh. There was a mask mandate last year, which was lifted, and then reinstated. Therefore, the Defendants, like the Department of Homeland Security in *Regents,* were required to assess whether there were reliance interests on its prior policies and actions, determine whether they were significant, and weigh any such interests against competing policy concerns. *See Regents,* 140 S.Ct. at 1915 (holding that failure to consider reliance on prior policy was arbitrary and capricious).

Here, families were forced to make long-term decisions about where to enroll their children in school--NACA, in-person in North Allegheny, private school, or elsewhere-- in reliance on prior policies. Yet there is no evidence that the Board assessed whether there were reliance interests on its prior policies at all, much less considered whether those reliance interests were significant, or how those reliance interests weighed against competing policy concerns. This failure renders its rescission arbitrary and capricious, and the Court should vacate the rescission of the mask mandate.

## REQUESTED REMEDY

Plaintiffs asks the Court to enter the Proposed Order attached to the accompanying Motion, void the action taken by the North Allegheny School Board at the August 18, 2021 meeting, and to reinstate the status quo by compelling the re-implementation of the universal masking requirement for students, staff, and visitors for grades K-12, while indoors, effective immediately.

Such action is in line with the Court's authority to restore the status quo that existed prior to the Board's vote. *See One Three Five, Inc. v. City of Pittsburgh*, 951 F. Supp. 2d 788, 807 (W.D. Pa. 2013) quoting *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir.1994). ("The primary purpose of preliminary injunctive relief 'is maintenance of the status quo until a decision on the merits of a case is rendered.'") "'Status quo' refers to 'the last, peaceable, noncontested status of

the parties." *Id.* quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.2004); *see also Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 283 (W.D. Pa. 2017) (in case concerning a Board Resolution to require all students to use the bathroom facility that matched their assigned sex at birth, the court stated, while there was some debate on what the status quo was prior to passage of the Board Resolution, the status quo was the "factual state of affairs that existed prior to the resolution")

This Court should enjoin the District from enforcing the Board's vote to make masks option and to strip Dr. Friez of her authority so make such decisions, and to restore the status quo, i.e., NASD should "require face coverings indoors students, staff[,] and visitors for grades K-12 starting Monday August 16," 2021-2022 Health and Safety Plan Update August 18, 2021 slide deck, p. 3. and restore Dr. Friez authority to make changes to the Health and Safety Plan without Board approval.

Accordingly, it is respectfully requested that his honorable court return the status quo and order that the universal masking directive of the Superintendent be re-instated.

In the alternative, the Court may void Defendants' August 18, 2021 action and remand so that the Defendants may offer a fuller explanation of their reasoning *at the time of the decision* or take new action based on full inquiry into the facts and full consideration of reliance interests. *See, e.g., Pension Benefit Guaranty Corporation v. LTV Corp.,* 496 U.S. 633, 654 (1990). In the interim, the court should vacate the arbitrary rescission of the mask mandate to avoid the irreparable harm described above.

Respectfully submitted,

GOLDBERG, KAMIN, GARVIN, LLP

Date: August 22, 2021

*/s/ Alexander W. Saksen*
Alexander W. Saksen
PA ID No. 86049
1806 Frick Building
437 Grant Street, 18th Floor
Pittsburgh, PA 15237
alexanders@gkattorneys.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief was served by e-mail on this 22nd day of August 2021, addressed to the below parties and counsel:

NASD SOLICITOR
Alfred Maiello, Esquire
Maiello, Brungo & Maiello
7500 Brooktree Ct.
Wexford, PA 15090
acm@mbm-law.net

MEMBER CHOMOS
achomos@northallegheny.org

MEMBER CROW
mcrow@northallegheny.org

MEMBER BLACKBURN
lblackburn@northallegheny.org

MEMBER MAHLER
kmahler@northallegheny.org

MEMBER MCCLURE
rmcclure@northallegheny.org

MEMBER MINTON
aminton@northallegheny.org

MEMBER RUSSELL
srussell@northallegheny.org

MEMBER WERNER
ewerner1@northallegheny.org

MEMBER YEAKEL
syeakal@northallegheny.org

BOARD SECRETARY
kcaldwell@northallegheny.org

NASD SUPERINTENDENT
mfriez@northallegheny.org

*/s/ Alexander W. Saksen*
Alexander W. Saksen