IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN MARTIN, | |
| Plaintiff, | Case No. _____ |
| v. | |
| RACE LIBERANTE AND ANTHONY DICESARO, together doing business as RACE FACTORY, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff Karen Martin by and through her attorney, David M. Manes, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Martin brings this Complaint to recover damages for breach of contract against both individual owners of business operating under the name Race Factory.

### II. Parties, Jurisdiction, and Venue

2. This Court has original jurisdiction under 28 U.S.C. §1332, as the matter in controversy exceeds $75,000.00 and the parties are of diverse citizenship.

3. Plaintiff Martin is a resident and citizen of North Carolina.

4. Defendant Race Liberante is a resident and citizen of Pennsylvania with an address at 216 Ritter Rd, Wexford PA 15090.

5. Defendant Anthony Dicesaro is a resident and citizen of Pennsylvania with an address at 210 Peach Dr, Pittsburgh PA 15236.

6. Liberante and Dicesaro operate jointly as the individual owners of the business known as Race Factory, registered as a Fictitious Name with the Pennsylvania Corporations Bureau. **See Exhibit 1**.

7. Race Factory is not an incorporated business entity and therefore operates by default as a general partnership under Pennsylvania law, with all partners individually liable for the obligations of the business and the actions of any partner done on behalf of the business.

8. Liberante and Dicesaro are therefore jointly and severally liable as individuals for all acts or omissions of Race Factory as alleged in this Complaint.

9. Complete diversity of citizenship exists between Plaintiff and Defendants.

10. A substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, venue is proper in the United States District Court for the Western District of Pennsylvania.

### III. Facts

11. Martin entered into a Race Factory Trans Am 2 Agreement ("Agreement") on or about November 25, 2020. **See Exhibit 2**.

12. Martin signed the Agreement and transmitted it to Liberante.

13. Martin also made a payment to Race Factory of $90,000 pursuant to the Agreement.

14. Liberante accepted the Agreement and indicated his assent to it on behalf of Race Factory in the following ways:

    a. By signing the Agreement (although a copy bearing Liberante's signature is not currently available to Martin);

    b. By accepting and retaining the $90,000 payment;

    c. By verbally indicating his assent to the Agreement;

    d. By taking affirmative steps to begin performance under the Agreement; and

    e. By making repeated promises to Martin that Race Factory would uphold the Agreement.

15. The purpose of the Agreement was for Race Factory to procure a racing vehicle and provide it to Martin's son to race in 6 races, renting from Race Factory.

16. Race Factory required a $90,000 payment up front, which Martin made, in order to obtain a racing vehicle.

17. Race Factory was not able to procure a vehicle to rent to Martin's son by the time of the first races, breaching the Agreement.

18. Race Factory attempted to mitigate that breach by temporarily obtaining a vehicle from another team, but Race Factory fraudulently misrepresented the cost to Martin and attempted to cover up the true cost.

19. Race Factory continued to represent to Martin that the car contemplated by the Agreement was in the process of being built and prepared for use by Martin's son.

20. In February and March 2021, Race Factory began to indicate that it did not want to perform under the Agreement by obtaining a vehicle for Martin's son, and eventually Liberante made it explicit that he was canceling the Agreement.

21. Race Factory retained the $90,000, but did not perform its obligations under the Agreement, and it has refused to return that payment to Martin.

## COUNT I
## Breach of Contract

22. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

23. Race Factory entered into the Agreement with Martin and then materially breached the Agreement.

24. Race Factory received the $90,000 payment from Martin and has not returned those funds, despite multiple demands.

25. As a result of Race Factory's breach, Martin has suffered damages including the $90,000 payment she made to Race Factory.

## COUNT II
## Fraudulent Inducement

26. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

27. To induce Martin into entering into the Agreement and making a $90,000 payment, Race Factory knowingly made certain false statements to Martin, including:

   a. That Race Factory would build a specific racing vehicle for use by Martin's son in six races;

   b. That Race Factory would provide mentoring, coaching, and marketing services to Martin's son;

      c.     That a $90,000 up-front payment was going to be used to build a specific vehicle that Race Factory would make available to Martin's son;

      d.     That the process of purchasing and building a racing vehicle for Martin's son was already begun, including designs and specifications; and

      e.     That Liberante had the requisite resources, intention, and expertise to perform Race Factory's obligations under the Agreement.

28.    Martin would not have entered into the Agreement or made a payment of $90,000 had Race Factory not made the above false representations.

29.    Martin did reasonably rely on the above false representations when she entered into the Agreement and made the $90,000 payment to Race Factory.

30.    Race Factory made the above false representations with the intent of causing Martin to rely on them, enter into the Agreement, and make the $90,000 payment.

31.    As a result of the fraudulent inducement, Martin has suffered damages in excess of $90,000.

32.    As a result of the fraudulent inducement, Martin is excused from any performance under the Agreement.

## COUNT III
### Unjust Enrichment

33.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

34.    By making a $90,000 payment to Race Factory, Martin conferred a benefit to Race Factory.

35.    Race Factory retained and benefited from that payment.

36. Race Factory did not perform as it had promised or provide any substantial benefit to Martin or Martin's son as agreed, and it would be unjust under the circumstances for Race Factory to retain the $90,000.

### **Prayer for Relief**

WHEREFORE, Martin respectfully requests that this Court enter judgment in her favor, and against the Defendants, and award all damages available at law and in equity, including:

a) Actual damages in excess of $90,000;

b) Costs of bringing this action;

c) Attorney fees;

d) Pre-judgment and continuing interest; and

e) Any other relief that the Court deems necessary and proper.

Respectfully Submitted,

/s/ David M. Manes
David M. Manes, Esq.
PA ID: 314661
**Manes & Narahari LLC**
Law & Finance Building
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
(412) 626-5570 Direct
dm@manesnarahari.com

## VERIFICATION

I, Karen Martin, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

*KM*

Karen Martin