IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Application of the Attorney General of Quebec for an Order to take Testimony for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | ) ) ) ) ) ) ) ) ) | Case No. |

**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO ISSUE A SUBPOENA TO ARTHUR FEYGELSON TO APPEAR FOR TRIAL
TESTIMONY FOR USE IN A FOREIGN PROCEEDING**

I.  **INTRODUCTION**

On July 6, 2013, a train derailed in Lac Mégantic, Quebec, Canada, destroying much of the town and killing nearly 50 people. A host of litigation ensued, including a consolidated litigation proceeding pending in the Quebec Superior Court (the "Canadian Proceeding"). In the Canadian Proceeding the plaintiffs seek recovery against Canadian Pacific Railway and its affiliates ("CP" or "Canadian Pacific"), for its role in the accident. The Petitioner here is the Attorney General of Quebec, who is one of the plaintiffs in the Canadian Proceedings, and files this Application requesting the Court to issue a subpoena to Arthur Feygelson to obtain his trial testimony by Zoom or recorded video deposition for use in the Canadian Proceedings.

## II. BACKGROUND

"On June 29, 2013, a train known as 'Train 282' departed from an intermodal transloading facility in New Town, North Dakota, with [72] tank cars in tow, bound for an Irving Oil Ltd. ("Irving [Oil]") refinery in Saint John, New Brunswick[, Canada]." *In re Montreal Maine & Atl. Ry., Ltd.,* 2015 WL 3604335, at *1 (D. Me. June 8, 2015). CP operated Train 282 from New Town to Cote-Saint-Luc, Quebec, where CP transferred control to Montreal Maine & Atlantic Railway, Ltd. ("MMA"). *Id.*

On July 5, 2013, MMA stopped Train 282 in Nantes, Quebec. *Id*. "Shortly after midnight, the Nantes Fire Department was called to put out a fire in one of Train 282's locomotives." *Id*. "The train's lead engine was powered down to allow [the] firefighters to put [out] the blaze." *Id*. After the fire was extinguished, MMA failed to restart Train 282's lead engine, and as a result, its "air-brake system lost power and the train began rolling downhill," toward Lac Mégantic, Quebec. *Id*. At 1:15 a.m., the train reached "downtown Lac Mégantic and derailed, causing many of its tank cars to rupture." *Id*. The resulting explosions and fires killed 50 people and destroyed downtown Lac Mégantic. *Id*.

The Canadian Proceeding was filed after the tragedy. *See* Ex. A (Arless-Frandsen Declaration). The plaintiffs (including Petitioner) seek damages from Canadian Pacific. *Id*. at ¶¶ 2-3. Petitioner requested the Quebec Superior Court to issue letters rogatory to obtain testimonial evidence from representatives of Canadian Pacific for use at trial. *Id*. at ¶ 5. As relevant to this Application, Petitioner requested the issuance of letters rogatory to obtain the testimony of Arthur Feygelson, an Account Manager at Canadian Pacific. *Id*. at ¶ 7. Mr.

Feygelson's testimony is important to inform the Quebec Superior Court about Canadian Pacific's contractual relationships with various stakeholders, including Irving Oil. *Id*. at ¶ 7 and 9.

On September 9, 2021, the Quebec Superior Court issued a Request for International Judicial Assistance (Letters Rogatory) which asks this Court to:

- Issue a subpoena ordering Mr. Feygelson to attend, *via* remote video feed, trial on October 25, 2021;

- Order that, while testifying, Mr. Feygelson may be represented or accompanied by counsel, if desired;

- Order that the *Civil Code of Quebec*, the *Code of Civil Procedure*, and other rules in force in Quebec, will govern the rules of procedure and evidence, including the requirement to swear an oath;

- Order that the Judge signing the Letters Rogatory, Martin Bureau, J.C.S. of the Quebec Superior Court, be appointed rogatory commissioner as required by Article 500 of the *Code of Civil Procedure*; and

- Authorize Mr. Feygelson to be examined and cross-examined on any fact or subject matter relevant to the Lac Mégantic Litigation.

*See* Ex. B. This Application followed.

### III.  LEGAL STANDARDS

Under 28 U.S.C. § 1782, a district court may permit discovery or order that testimony be given in the United States for use in a foreign proceeding. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (U.S. 2004) ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."). Section 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made

>pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
>A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

Thus, pursuant to Section 1782(a), a district court may order a resident to give testimony in a foreign tribunal if presented with an order of the foreign tribunal, *via* letters rogatory or otherwise. If specified in the foreign tribunal's order, the practices or procedures of the foreign country will govern the manner of testimony.

The Supreme Court's decision in *Intel* sets out the requirements for granting a Section 1782 request. *See In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, 2013 WL 6164435, at *2 (E.D. Pa. Nov. 22, 2013), *citing Intel*, *supra*. at 255. The mandatory requirements are: (1) "the person subpoenaed must reside in the district in which the district court sits;" (2) the "request must be for 'testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal;" and (3) the "request may come from 'any interested person.'" *Id.* at *2 (citation omitted).[1]

---

[1] *Intel* did not address the question of a court proceeding on an *ex parte* basis. Numerous courts have found that granting Section 1782 applications *ex parte* is appropriate given the purpose of the statute and the right of the subpoenaed party to file a motion to quash. *See In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du* Mais, *supra*

The four discretionary factors, known as the *Intel* factors, are: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach and, thus, are accessible absent Section 1782; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to United States federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *Intel, supra*. at 264-265.

IV.   **ARGUMENT**

   **A. The Application Satisfies Section 1782(a)'s Mandatory Requirements**

Here, Section 1782(a)'s statutory requirements are satisfied. *First,* Arthur Feygelson, resides in the Western District of Pennsylvania. *See* Ex. A at ¶ 10. *Second,* Mr. Feygelson's testimony will be introduced in the trial in the Canadian Proceeding. *Third,* this Application is made by the Attorney General of Quebec, who is a party to the Canadian Proceeding and, as such, is an interested party. *See Intel*, *supra* at 256; *see also* Ex. A at ¶ 2. In addition, this Application

---

at *2, n.1.  *Accord Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."); *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (same); *In re Ex Parte Application of Nokia Corp.*, 2013 WL 6073457, at *2 (N.D. Cal. Nov.8, 2013) (same); *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n. 6 (S.D.N.Y. 1991) (same).

is also made pursuant to Letters Rogatory issued by the Quebec Superior Court, a foreign tribunal.[2] *See* Ex. A at ¶ 7; *see also* Ex. B.

### B. The Application Satisfies the *Intel* Factors

The *Intel* Factors are also met. *First,* Mr. Feygelson's testimony cannot be ordered by the Quebec Superior Court as it has no jurisdiction to compel his testimony. *See* Ex. A at ¶ 2 and ¶ 10. *Second,* the seriousness of the claims at issue in the Canadian Proceeding strongly weigh in favor of granting the instant Application. *Third,* the Application does not raise any risk of subverting the proof gathering restrictions in Quebec. To the contrary, the Quebec Superior Court requested the judicial assistance of this Court in securing Mr. Feygelson's testimony to aid in the Canadian Proceeding. *See* Ex. A at ¶ 9; *see also* Ex. B. *Finally,* the subpoena is not unduly burdensome or intrusive. Mr. Feygelson has not been deposed in the Canadian Proceeding and the subpoena simply requests that he provide trial testimony by Zoom (live) or a video deposition (recorded). *See* Ex. A at ¶ 12. The testimony time will not exceed one day. *See id*. at ¶ 11.

Based upon the foregoing, both Section 1782(a)'s mandatory and discretionary requirements are met in the present case.

---

[2] Of note, "Canada, which is not a party to the Hauge Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, applies its own domestic statute or common law to letters rogatory." *Goldberg v. Dufour*, 2020 WL 373206, at *4 (D. Vt. Jan. 23, 2020). "Under the Canada Evidence Act, a Canadian court maintains the discretion to 'command the attendance of [a] party or witness for the purpose of being examined" when "any court or tribunal outside Canada, before which any civil, commercial or criminal matter is pending, is desirous of obtaining the testimony in relation to that matter of a party or witness within the jurisdiction of the first mentioned court[.]' *Id*., *citing* Canada Evidence Act, R.S.C. 1985, c. C-5, § 46(1).

### C. Remote Testimony in a Foreign Proceeding

No reported case has addressed a request for the issuance of a subpoena to testify remotely in foreign proceedings (*i.e.,* by Zoom). In an application Petitioner filed in the District of Maine seeking the same relief requested here (for different witnesses), the Court granted Petitioner's application and issued subpoenas directing two witnesses to appear for a videotaped deposition by remote means for use in the Canadian Proceeding. *See In Re: Application of Attorney General of Quebec,* 2021 WL 4497145 (D. Me. Sept. 30, 2021), attached hereto as Ex. C. Respectfully, Petitioner requests this Court to grant this Application and authorize a subpoena be issued for Mr. Feygelson to testify remotely by Zoom at the trial of the Canadian Proceeding. This request is consistent with the Letters Rogatory and is within the scope of this Court's power to order remote testimony pursuant to Rule 43(a).

Rule 43(a) provides in relevant part: "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). In general, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." Fed. R. Civ. P. 43(a) Advisory Committee's note to 1996 amendment. Once unheard of, testifying remotely by Zoom is now commonplace, and courts "are regularly determining that the ongoing COVID-19 pandemic constitutes good cause for remote testimony." *Guardant Health, Inc. v. Found. Med., Inc.*, 2020 WL 6120186, at *3 (D. Del. Oct. 16, 2020); *see also Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, 2020 WL 4794533, at *2 (D. Del. Aug. 18, 2020); *Argonaut Ins. Co. v. Marietta Enters., Inc.*, 2020 WL 3104033, at *2 (E.D.N.Y.

June 11, 2020); *Centripetal Net., Inc. v. Cisco Sys., Inc.*, 2020 WL 3411385 (E.D. Va. April 23, 2020).

Here, "good cause in compelling circumstances" exists for ordering remote testimony. Fed.R.Civ.P. 43(a). As an Account Manager for Canadian Pacific, Mr. Feygelson's testimony is vital to discovering information regarding Canadian Pacific's sales and contractual relationships with various stakeholders. *See* Ex. A at ¶ 7 and 12. The Quebec Superior Court requested that Mr. Feygelson to testify remotely, and the subpoena requested by the Application provides Mr. Feygelson the option to testify by Zoom or in a recorded video deposition. The Application thus provides for efficiently obtaining the testimony requested by Petitioner, while respecting Mr. Feygelson's rights.

V.     **CONCLUSION**

For the foregoing reasons, the Attorney General of Quebec respectfully requests that the Court to grant the instant Application, enter an Order under 28 U.S.C. § 1782 and issue a subpoena to Arthur Feygelson for the taking of trial testimony for use in the Canadian Proceedings.

October 15, 2021                                       Respectfully submitted,

**BLANK ROME LLP**

*/s/ Andrew K. Fletcher*
Andrew K. Fletcher (Pa. ID. No. 75544)
Union Trust Building
501 Grant Street, Suite 850
Pittsburgh, PA 15219
Phone: (412) 932-2800
andrew.fletcher@BlankRome.com

*Counsel for Petitioner,*
*The Attorney General of Quebec*