## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REGINA CAMP EL, Individually; HARUN BEY, Individually; AHMARI CAMP BEY, Individually; and REGINA CAMP EL, as Parent and Natural Guardian of A.C.E. a minor, Individually;

               Plaintiffs,                      Civil Action No.:

       vs.

CITY OF PITTSBURGH operating the PITTSBURGH BUREAU OF POLICE; SCOTT SCHUBERT, individually and in his official capacity as Chief of the Pittsburgh Bureau of Police; JOHN FISHER, Commander of Zone 3 of the Pittsburgh Bureau of Police, in his professional capacity and individually; OFFICER ANTHONY CANCILLA; OFFICER ROBERT FRAINO; OFFICER DYLAN BLOSE; OFFICER JOSHUA DENGLER; OFFICER MARIO MORANTE; OFFICER RICHARD DILIMONE; OFFICER BRENNAN THROWER; OFFICER RYAN CONNOLLY; OFFICER THOMAS GAULT; OFFICER ANTHONY ROSATO; OFFICER SEAN DUFFY; OFFICER DAWN MERCURIO, OFFICERS JOHN DOE,

               Defendants.

## **PLAINTIFFS' COMPLAINT**

AND NOW, comes the Plaintiffs, Regina Camp El, Harun Bey, Ahmari Camp Bey, and A.C.E., a minor by and through his parent and natural guardian Regina Camp El, by and through their undersigned counsel, Max Petrunya, Esquire; Max Petrunya, P.C.; Paul Jubas, Esquire; and, the Office of Paul Jubas Law, and file the following Complaint in Civil Action.

## PARTIES

1.      Plaintiff Regina Camp El (hereinafter referred to as "Plaintiff Ms. Camp El") is an adult individual residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

2.      Plaintiff Harun Bey (hereinafter referred to as "Plaintiff Mr. Bey") is an adult individual residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

3.      Plaintiff A.C.E., a minor, (hereinafter referred to as "Minor Plaintiff") is a minor residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

4.      Plaintiff Regina Camp El is the parent and natural guardian of Minor Plaintiff. In addition to her Individual claims, Plaintiff Ms. Camp El also brings claims for Minor Plaintiff in her capacity as his parent and natural guardian.

5.      Plaintiff Ahmari Camp Bey (hereinafter referred to as "Plaintiff Mr. Camp Bey") is an adult individual residing at 1520 Amanda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

6.      Defendant, City of Pittsburgh, (hereinafter referred to as "City" and/or "Pittsburgh"), is a municipality of the Commonwealth of Pennsylvania with its principal officers located at 414 Grant Street, 5th Floor, Room 512, Pittsburgh, Allegheny County, Pennsylvania, 15219. At all times relevant hereto, the City of Pittsburgh was authorized to, and did, operate and maintain the Pittsburgh Bureau of Police (hereinafter referred to as "Pittsburgh Police" and/or "PBP"). At all times relevant hereto, this Defendant acted y and through its duly authorized agents, employees, and/or assigns, who were then and there acting within the scope of their employment, under color

2

of state law and in accordance with customs, policies, and practices of the City of Pittsburgh.

7.      Defendant City of Pittsburgh Bureau of Police is a governmental entity which is organized and exists pursuant to the laws of the Commonwealth of Pennsylvania. The principal office of Defendant City of Pittsburgh Bureau of Police is located at 1203 Western Avenue, Pittsburgh, Allegheny County, Pennsylvania 15233. The Defendant's police officers have jurisdiction on and adjacent in Allegheny County. The Police Officers of such police force are deployed with various lethal and non-lethal weapons for use in execution of their duties. At all times relevant hereto, Defendant City of Pittsburgh Bureau of Police was acting under color of state law and acted by and through its duly authorized agents, employees, and/or assigns, who were then and there acting within the course and scope of their employment. The performance of their job was done in accordance with the customs, policies, and practices of the city of Pittsburgh and the City of Pittsburgh Bureau of Police.

8.      Defendant Scott Schubert is the Chief of the Pittsburgh Bureau of Police (hereinafter referred to as "Defendant Schubert," and/or "Chief of Police"). At all times relevant hereto, Defendant Schubert was a policymaker of Defendant City of Pittsburgh. At all times relevant hereto, Defendant Schubert ordered, authorized, participated in and/or acquiesced in the violation of Plaintiff's rights as alleged herein. At all times relevant, Schubert was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Schubert is sued in his official capacity as Chief of Police and in his individual capacity.

9.      Defendant John Fisher is the Commander of Zone 3 of the Pittsburgh Bureau of Police (hereinafter referred to as "Commander Fisher" and/or "Zone 3 Commander"). At all times relevant hereto, Defendant Fisher ordered, authorized, participated in, and/or acquiesced in the

violations of Plaintiff's rights as alleged herein. At all times relevant hereto, Defendant Fisher was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Fisher is sued in his official capacity as Zone 3 Commander and in his individual capacity.

10.     Defendant Anthony Cancilla (hereinafter referred to as "Defendant Cancilla" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Cancilla was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Cancilla is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

11.     Defendant Robert Fraino  (hereinafter referred to as "Defendant Fraino" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Fraino was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Fraino is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

12.     Defendant Dylan Blose (hereinafter referred to as "Defendant Blose" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Blose was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Blose is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

13.     Defendant Joshua Dengler (hereinafter referred to as "Defendant Dengler" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Dengler was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Dengler is sued in his official

capacity as a Pittsburgh Police Officer and in his individual capacity.

14.     Defendant Mario Morante (hereinafter referred to as "Defendant Morante" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Morante was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Morante is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

15.     Defendant Richard Dilimone (hereinafter referred to as "Defendant Dilimone" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Dilimone was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Dilimone is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

16.     Defendant Brennan Thrower (hereinafter referred to as "Defendant Thrower" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Thrower was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Thrower is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

17.     Defendant Ryan Connolly (hereinafter referred to as "Defendant Connolly" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Connolly was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Connolly is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

18.     Defendant Thomas Gault (hereinafter referred to as "Defendant Gault" is a police

officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Gault was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Gault is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

19.     Defendant Anthony Rosato (hereinafter referred to as "Defendant Rosato" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Rosato was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Rosato is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

20.     Defendant Sean Duffy (hereinafter referred to as "Defendant Duffy" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Duffy was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Duffy is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

21.     Defendant Dawn Mercurio (hereinafter referred to as "Defendant Mercurio" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Mercurio was acting under color of state law, within the course and scope of her official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Mercurio is sued in her official capacity as a Pittsburgh Police Officer and in her individual capacity.

## JURISDICTION and VENUE

22.     This Honorable Court has concurrent jurisdiction over actions that arise under 42 U.S.C. §1983 and state law.

23.   Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## FACTS

24.   Plaintiffs Harun Bey and Regina Camp El are husband and wife, and the parents of Minor Plaintiff A.C.E. and Plaintiff Ahmari Camp Bey.

25.   On November 11, 2019, at approximately 8:00 p.m., Plaintiff Mr. Camp Bey was driving through the City of Pittsburgh. Defendant Cancilla attempted to conduct an illegal traffic stop of Plaintiff Mr. Camp Bey. In fear for his safety

26.   On November 11, 2019, at approximately 8:00 p.m., Plaintiff Harun Bey was walking in his first floor hallway while holding his 1 year-old daughter. His wife, Plaintiff Regina Camp El, was not in the home, but out running errands.

27.   His son, Plaintiff Ahmari Camp Bey, burst through the front door. Plaintiffs' front doorway includes two doors – a first door that opens into a foyer, and a second door that opens into the house. Plaintiff Harun Bey turned toward the door, and soon thereafter saw the flash of lights and police sirens. Plaintiffs Harun Bey and his son, Plaintiff Ahmari Camp Bey then engaged in the following exchange:

> HB: What's going on?
>
> ACB: (gasping) They followed me.
>
> HB: What did you do? Did you do anything? Did you do something?
>
> ACB: No, I saw them look at me (referring to the police) and then they got behind me and followed me with their lights off."

28.   Through the front door, Plaintiff Harun Bey then saw Defendant Pittsburgh Police Officers at the front door with their guns drawn. Plaintiff Harun Bey, still holding his one-year-old daughter, calmly walked to the front door and saw numerous officers standing in the foyer with

their guns drawn, screaming incoherently that they were going to break the door down. Plaintiff

Harun Bey and Defendant Thomas Gault then engaged in the following exchange:

> HB: (calmly) What's going on?
>
> TG: (screaming) Open the door! Put the baby down!.
>
> HB: (calmly) What's going on? What do you want? Is there a crime?
>
> TG: (screaming) It's a traffic stop, now open the door and put the baby down

Plaintiff Harun Bey continued to speak calmly with officers to discover the circumstances of the

situation, and Defendant Officers continued to scream and escalate their threats. The two then

engaged in the following exchange:

> HB: Do you got a warrant?
>
> TG: No, I'll get one.
>
> HB: Well, then that's what you'll have to do.

Defendant Gault then stepped back and out of the foyer with the other officers.

29.     Plaintiff Regina Camp El attempted to return home shortly thereafter, but wasn't

able to reach her street because police had it blocked off. Plaintiff Regina Camp El, her son,

Plaintiff Ahmir Camp El, and his girlfriend each arrived at about the same time. As Plaintiff Regina

Camp El began walking toward her home, an officer asked her, "Where are you going?" to which

Plaintiff replied, "That's my house." Plaintiff's son and daughter in law then approached, and

Defendant Officer Duffy aimed a rifle at Plaintiff Regina Camp El, and in her son's face.

30.     Plaintiff Regina Camp El then engaged in a conversation with Defendant Gault, in

which she informed Defendant Gault that she wanted the name and badge number of Defendant

Duffy ho just pointed a rifle in her son's face. She wrote down that officer's badge number and

name, then wrote down Defendant Gault's information. Plaintiff Regina Camp El then stated that

she wanted the names and badge numbers of each of the officers, to which Defendant Gault replied,

"Those are the only two you need right now." Plaintiff replied, "No, I want them all." As she started writing down the names and badge numbers of the other officers, they grabbed her, placed her under arrest and began to put her in handcuffs. Defendant Officers Gault, Rosato, Dilimone, and Cancilla roughed up Plaintiff Regina Camp El, including one of the Defendants placing her in a headlock during their attempt to put her in handcuffs.

31.   As Plaintiff Ahmir Camp El watched Defendant Officers roughing his mother up, and began screaming at and advancing toward Defendant Officers. Defendant Officers Mercurio, Cancilla and Blose then placed Plaintiff Ahmir Camp El under arrest by throwing him chest first into a fence, which caused choking and bruising.

32. After hearing his wife's screams, Plaintiff Harun Bey put the baby down and walked outside through the front door. Officers issued one verbal command to place his hands in the air, to which Plaintiff complied. While making his way toward the gate with his hands up and informing Defendant Officers that he was unarmed, Plaintiff Harun Bey was rushed by Defendants and pushed to the ground. At no point did Plaintiff display any aggression or assaultive behavior towards Defendant Officers. Defendant Officers Fraino, Cancilla, Dilimone, and Thrower then kicked Plaintiff multiple times, dragged his face against the ground, cranked his arm and kneed him in the neck.[1]

33.   After the arrests of Plaintiffs, Defendants Gault, Rosato, and Duffy (at Duffy's direction) entered Plaintiffs' residence at 218 Jucunda Street without a warrant and conducted a search of their property, purportedly for a 15 year-old, as well as guns. In order to do so, Defendant Officers busted Plaintiffs' front doors down, causing substantial damage.[2] Plaintiff's residence was

---

[1]  The substance of these allegations were confirmed by investigative review from a governmental agency.
[2]  The substance of these allegations were confirmed by investigative review from a governmental agency.

searched without a warrant under the pretense of a protective sweep. Defendant Officers conducted the warrantless search with their guns drawn.[3]

34.     Following the arrests of Plaintiffs, Defendants Cancilla, Gault and Rosato conducted more than an inventory search of Plaintiff Ahmari Camp Bey's vehicle. After an initial inventory search, Plaintiff's vehicle was searched by Defendants Gault and Rosato once, and by Defendant Cancilla three additional times.[4]

35.     Following the incident, Defendant Officers charged Plaintiff Regina Camp El with Obstruction Administration of Law (18 § 5101) and Resisting Arrest (18 § 5104). On March 22, 2021, Plaintiff was acquitted of all charges by Judge Bickett in the Allegheny County Court of Common Pleas.

36.     Following the incident, Defendant Officers charged Plaintiff Harun Bey with Endangering Welfare of Children (18 § 4304 §§ A1); Obstruction of Administration of Law (18 § 5101); and Resisting Arrest (18 § 5104). On March 22, 2021, Plaintiff was acquitted of all charges.

37.     Following the incident, Plaintiff Mr. Camp Bey was charged with a litany of Offenses by Defendant Officers.

38.     Following the incident, Plaintiff A.C.E. was charged by citation by Defendant Officers for his actions when seeing Defendant Officers assault his mother, Plaintiff Ms. Camp El.

39.     Following the incident, Defendant Officers sold Plaintiff Mr. Camp Bey's vehicle at auction.

40.     Following the incident, Plaintiff Regina Camp El was prevented from returning to work because of the nature of the charges against her, resulting in significant lost wages.

---

[3] The substance of these allegations was confirmed through investigative review by a governmental agency.
[4] The substance of these allegations was confirmed through investigative review by a governmental agency.

## COUNT I

**42 U.S.C. §1983 – Fourth and Fourteenth Amendment Violations**

**All Plaintiffs v. All Defendants**

41.    All of the paragraphs above are incorporated herein by reference.

42.    At all times relevant hereto, each Defendant was a state actor and/or was acting under color of state law for 42 U.S.C. §1983 purposes.

43.    At all times relevant hereto, it was the practice, policy, and/or custom of the Defendants, including the individual Defendant officers noted herein, to engage in excessive force, unlawful arrest, improper training, inadequate hiring, negligent retention, and/or unconstitutional and unreasonable search, seizure, and abusive practices.

44.    The actions of all Defendants in this matter related to the incident on November 11, 2019 involving the Plaintiffs constitute violations of Plaintiffs' Civil and Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitutions. Said rights include the right to be free abusive, arbitrary, and capricious governmental action. These rights are enforceable via 42 U.S.C. § 1983.

45.    As a direct and proximate result of the violations of Plaintiffs' Civil and Constitutional rights by Defendants, Plaintiffs suffered a loss of their liberty and freedom, damage to their residence, bodily injury and immediate and ongoing pain and suffering, mental anguish. The injuries suffered by Plaintiffs are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully request this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's

fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT II

### 42 U.S.C. § 1983 – Excessive Use of Force by Defendants

46.   Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

47.   The force used by Defendants against all Plaintiffs during the course of their arrests was objectively inhumane and unnecessary, and constituted the unreasonable use of excessive force in violation of Plaintiffs' clearly established Constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

48.   Defendants used unreasonable and excessive force against Plaintiffs when, with a depraved indifference to human life and conscious disregard for their safety and the safety of the general public, violently grabbed Plaintiffs, kicked, punched, and shoved Plaintiffs, choked Plaintiffs, and pointed weapons at Plaintiffs.

49.   Defendants committed the acts described herein in a gross disregard of Plaintiffs' Constitutional rights while acting under color of state law, and specifically deprived Plaintiffs of their Constitutional right to be free from excessive police force under the Fourth Amendment.

50.   At no time during this interaction with Defendants did Plaintiffs pose any threat of violence to any Defendants.

51.   As a result of Defendants' outrageous conduct, Plaintiffs suffered physical and mental injuries.

52.   As a direct and proximate result of the excessive and unnecessary force used by Defendants, Plaintiffs suffered loss of their liberty and freedom, bodily injury and immediate and

ongoing pain and suffering, mental anguish. The injuries suffered by Plaintiffs are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT III

### 42 U.S.C. § 1983 – Failure to Intervene Against All Defendants

53.    Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

54.    All individual Defendants are police officers acting under color of state law.

55.    The individual Defendants, as police officers working with on November 11, 2019, had a duty to intervene to prevent their fellow officers from using excessive force against the Plaintiffs.

56.    All individual Defendants had a reasonable opportunity to intervene given their proximity to the excessive force taking place and being perpetrated against Plaintiffs.

57.    Defendants failed to intervene or take any action to prevent Defendants from using excessive force, wrongfully detaining, and ultimately injuring the Plaintiffs.

58.    Furthermore, Defendants failed to intervene when the Civil and Constitutional rights of the Plaintiffs with an abuse of process and malicious prosecution.

59.    As a direct and proximate result of the conduct of Defendants, Plaintiffs suffered loss

of their liberty and freedom, bodily injury and immediate and ongoing pain and suffering, mental anguish, and medical expenses for her treatment and care. The injuries suffered by Plaintiff are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT IV

### 41 U.S.C. § 1983 – *Monell* Claim

60.    Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

61.    Defendant Pittsburgh Bureau of Police is subject to liability when its employees cause constitutional violations pursuant to a municipal policy or custom.

62.    Defendant Pittsburgh Bureau of Police violated the Plaintiffs' Fourth Amendment rights by failing to train its officers to reasonably respond to non-threatening individuals like Plaintiffs and failing to provide adequate training as it relates to traffic stops, pursuit, de-escalation, excessive force, abuse of process, malicious prosecution, discrimination, and engaging in appropriate behavior and conduct which is becoming of a police officer acting under color of state law.

63.    Defendant Pittsburgh Bureau of Police violated the Plaintiffs' Fourth Amendment rights by engaging, as a custom, policy, and practice, in behavior that caused Constitutional violations to individuals like Plaintiffs by inappropriately responding to traffic stops, non-

threatening situations with excessive, unreasonable, and unnecessary force, and discriminatory conduct towards Plaintiffs by removing Plaintiffs'

64.    These Constitutional violations were caused by Defendant Pittsburgh Bureau of Police's lack of training and supervision in regards to officers having the ability, knowledge, skills, and training to interact with non-threatening individuals like Plaintiff without causing physical harm.

65.    Furthermore, as a custom and policy, failed to provide adequate training, supervision, monitoring, or policies as a custom and practice to ensure that police officers did not engage in Constitutional violations and deprivations as Defendants did in this matter.

66.    Defendant Pittsburgh Bureau of Police, by and through its organization and through Defendants, knew or should have known that Plaintiffs were non-threatening, and they should have known that any use of force was objectively unreasonable and unnecessary in light of the totality of the circumstances.

67.    The force used by Defendant Pittsburgh Bureau of Police against Plaintiffs during their arrest was objectively inhumane and unnecessary. The actions of Defendant Pittsburgh Bureau of Police constituted the unreasonable and excessive use of force, in violation of the Plaintiff's clearly established Constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

68.    At no time were Plaintiffs a threat of any danger or violence.

69.    As a direct and proximate result of the conduct of Defendants, Plaintiffs suffered loss of their liberty and freedom, bodily injury and immediate and ongoing pain and suffering, mental anguish, and medical expenses for her treatment and care. The injuries suffered by Plaintiffs are

ongoing and will continue indefinitely.

70.    Furthermore, Defendants were acting in accordance with custom and practice of Defendant Pittsburgh Bureau of Police which failed to train Defendants and failed to provide adequate policies, procedures, training, monitoring, and supervision to prevent Constitutional violations from occurring.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT V

### Battery Against Individual Defendants

71.    Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

72.    Defendants' actions against Plaintiffs, when they used excessive force and arrested Plaintiffs without probable cause, constituted an intentional, unwelcome, and unprivileged touching of Plaintiffs, and was undertaken in bad faith and with actual malice.

73.    As a direct and proximate result of the conduct described above, Plaintiffs suffered loss of their liberty and freedom, bodily injury and immediate and ongoing pain and suffering, mental anguish, and medical expenses for her treatment and care. The injuries suffered by Plaintiff are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all

costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against all Defendants, jointly and severally, and award them compensatory and consortium damages in an amount in excess of jurisdictional arbitration limits, punitive damages, interest, costs, attorneys' fees, and any other relief which this Honorable Court may deem necessary to compensate Plaintiffs for which this suit was brought.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

By: */s/ Max Petrunya*
    MAX PETRUNYA, ESQUIRE
    Pa. I.D. No.: 309122
    MAX PETRUNYA, P.C.
    5 Bayard Rd. Unit 917
    Pittsburgh, PA 15213
    (412) 720-3497
    maxpetrunyapc@gmail.com

By: */s/ Paul Jubas*
    PAUL JUBAS, ESQUIRE
    Pa. I.D. No.: 311832
    PAUL JUBAS LAW, P.C.
    P.O. Box 10704
    Pittsburgh, PA 15203
    (412) 230-0023
    pjubasesq@gmail.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November, 2021, I caused a copy of the foregoing Plaintiffs' Complaint to be served via the Court's CM/ECF system to all attorneys of record, including counsel for the Defendants.

By: */s/ Paul Jubas*
PAUL JUBAS, ESQUIRE
Pa. I.D. No.: 311832
PAUL JUBAS LAW, P.C.
P.O. Box 10704
Pittsburgh, PA 15203
(412) 230-0023
pjubasesq@gmail.com

*Counsel for Plaintiffs*