IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA CAMPBELL, | |
| Plaintiff, | Case No. _____ |
| v. | |
| INSPIRE BRANDS, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, Amanda Campbell, by and through her attorney, Prabhu Narahari, Esq., of Manes & Narahari, LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*

### II. Jurisdiction and Venue

2. This action arises under Title VII. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in western Pennsylvania, and,

therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding her allegations under Title VII on January 15, 2021, under charge number 533-2021-00502. *See Exhibit 1*.

6. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on September 29, 2021. This Complaint has been filed within ninety (90) days of the Plaintiffs receipt, thus making this action timely. *See Exhibit 2.*

### III. Parties

7. Plaintiff, Amanda Campbell ("Plaintiff"), is an adult individual with a primary residence located at 1067 Leckrone Masontown Road, Pennsylvania 15458.

8. Defendant, Inspire Brands, Inc. is a corporation with a business address at 515 Synergy Drive, Uniontown, PA 15401.

9. Defendant employs at least 15 individuals.

### IV. Facts

10. Plaintiff began working for Defendants as a crew member on September 11, 2020.

11. Plaintiff was compensated at a rate of $9.00 per hour.

12. Plaintiff faced persistent sexual harassment during her employment with Defendant.

13. Plaintiff was an excellent employee, and she largely enjoyed her job.

14. However, soon after her hiring, she began to experience instances of sexual harassment perpetrated by the store's General Manager, Michael Last Name Unknown.

15. At first, Plaintiff began to notice that Michael had romantic feelings for her, as he frequently spoke with her and appeared to favor her over other employees.

16. He constantly asked Plaintiff about her personal life, he frequently called her on her personal phone, and he was often caught staring at her while she worked.

17. Eventually, other members of the staff began to notice Michael's pattern of interest in Plaintiff.

18. On December 19, 2020, Plaintiff received a text message from an unknown phone number. The sender identified himself as Plaintiff's former boyfriend, and he began to engage in a highly explicit conversation with her, despite her protests to the content of the messages.

19. Throughout the course of their conversation, the sender frequently requested photographs of Plaintiff.

20. Believing the sender to be her ex-boyfriend, Plaintiff sent several images of herself through the message chain.

21. Eventually, after numerous text messages were exchanged between the parties, the sender revealed that he was not Plaintiff's ex-boyfriend and identified himself as Michael – the general manager of the Uniontown Arby's location.

22. In revealing himself, Michael stated in a text message: "I'm not your ex, it's Mike please don't tell Lenny or anyone I'll literally buy you any drugs you want after tonight I'll give u all the stuff I have in my car now if u suck my dick." Notably, "Lenny" is Arby's Regional Manager Lenny Malone and Michael's immediate boss.

23. Michael went on to send a series of explicit, derogatory text messages to Plaintiff, stating: "Will u please suck my little dick?"; "Just want a bj my dick is small

won't take long I swear"; and "All I want is you to suck my little dick and you can have anything. I'll even pay you $15 an hour."

24.     He then began to plead with Plaintiff, offering money and increased wages if she would not report his behavior to Mr. Malone.

25.     Michael stated through text message: "I can pay you whatever you want don't do that just trust me please don't tell Lenny and just want one bj." Michael further offered: "Just one time that's all I'll raise your pay give you whatever days you want anything."

26.     Michael made one final plea before the exchange ended, offering "Better pay, vacation, weed, more money better hours 1 bj."

27.     Plaintiff immediately reported this appalling conduct to Mr. Malone.

28.     She also contacted Defendant's Human Resources Department, and she expressed an inability to continue working with an individual who so dubiously and inappropriately offered her a higher compensation and better work hours for an exchange of oral sex.

29.     Plaintiff spoke to HR representative, Megan Mace, who offered to transfer her to a different restaurant location.

30.     However, because the alternative location was a nearly sixty-minute drive from the Uniontown location, Plaintiff was financially unable to accept the transfer.

31.     Ms. Mace further offered to schedule Plaintiff to work at different times than Michael. This option was also not suitable, as Plaintiff absolutely dreaded any possible interaction with Michael from that point forward.

32. As a result, Plaintiff was unable to continue working at the Uniontown location due to her legitimate fear for her own physical safety and emotional well-being in the presence of Michael.

33. Plaintiff was thus constructively from her position with Respondent on December 21, 2020.

## COUNT I

**Sexual Harassment and Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964**

34. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

35. Under Title VII, it is unlawful for an employer to engage in discrimination against an employee on the basis of her sex with regard to the "compensation, terms, conditions, or privileges of [her] employment." 42 U.S.C. § 2000e-2(a)(1).

36. The United States Supreme Court has long held that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986).

37. In order to show the existence of a hostile work environment, a plaintiff must first demonstrate that "she suffered intentional discrimination because of her gender" and that "the discrimination was pervasive and regular." Valenti v. Triangle Circuits of Pittsburgh, Inc., 419 F.Supp.2d 701, 706 (W.D. Pa. 2005).

38. A plaintiff must also present evidence to show that "the discrimination detrimentally affected her," and, such treatment "would have detrimentally affected a reasonable person of the same protected class in her position." Id.

39. Finally, a plaintiff must show that "there is a basis for respondeat superior liability." Id.

40. Here, Michael directly targeted Plaintiff based on her sex in requesting, several times, that she engage in oral sex with him.

41. Prior to the text message interaction, Michael would frequently stare at Plaintiff and ask about her personal life while they were working together.

42. These actions, all of which were taken because Plaintiff is female, were pervasive. The harassment began almost immediately after she was hired to work for the Company.

43. Michael's treatment of Plaintiff had a serious impact on her. She felt violated, uncomfortable, and unsafe. She feared returning to work to an environment wherein her general manager had posed as a friend in order to trick her into sending him photos of herself.

44. Plaintiff also felt unsafe around Michael as a result of his actions.

45. Any reasonable person would be appalled by this shameful conduct.

46. Defendant had a duty to provide Plaintiff with a safe work environment free of sexual harassment and violence. Defendant failed to adhere to this simple standard of decency, and, as a result, it violated its duty to Plaintiff.

**COUNT II**

**Sexual Harassment and Constructive Discharge in Violation of Title VII of the Civil Rights Act of 1964**

47. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

48. A constructive discharge occurs when employment conditions are permitted to be "so unpleasant or difficult that a reasonable person would have felt compelled to resign." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001).

49. To determine whether a constructive discharge has occurred, the Court must analyze whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Sheridan v. E.I. du Pont de Nemours & Co., 100 F.3d 1061, 1075 (3d Cir. 1996).

50. Further, "a constructive discharge may or may not involve official action." Pennsylvania State Police v. Suders, 542 U.S. 129, 131 (2004).

51. Here, Plaintiff was forced to choose between continuing to work at the same location as Michael or accepting a transfer to an Arby's location sixty minutes away. Neither option was reasonable.

52. Michael's harassment of Plaintiff was so serious and threatening that she absolutely could not risk further interactions with him.

53. Michael's actions clearly rise to the level of "unpleasant or difficult" conditions.

54. In failing to provide a safe environment, Defendant left Plaintiff with no other option than to resign from her position.

55. A reasonable person in Plaintiff's position would have felt compelled to resign.

56. Therefore, Defendant constructively discharged Plaintiff.

## COUNT III

**Sexual Harassment and Hostile Work Environment in Violation of the Pennsylvania Human Relations Act of 1955**

57. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

58. The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).

59. Because Plaintiff is able to state a *prime facie* case for sexual harassment and hostile work environment under Title VII, so too will she be able to state such a claim under the PHRA.

60. Based on the foregoing, Plaintiff was the victim of illegal discrimination in violation of the PHRA.

## COUNT IV
**Sexual Harassment and Hostile Work Environment in Violation of the Pennsylvania Human Relations Act of 1955**

61. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

62. The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).

63. Because Plaintiff is able to state a *prime facie* case for sexual harassment and constructive discharge under Title VII, so too will she be able to state such a claim under the PHRA.

64. Based on the foregoing, Plaintiff was the victim of illegal discrimination in violation of the PHRA.

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgement in her favor, and against the Defendants, and award all damages available at law in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, prejudgment and continuing interest, and any other relief that the Court deems necessary and proper.

Respectfully Submitted,

/s/ Prabhu Narahari
PA ID: 323895
**MANES & NARAHARI, LLC**
Law & Finance Building
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
(412) 626-5588 Direct
(412) 650-4845 Fax
pn@manesnarahari.com